PENNOYER *v.* NEFF.

1. A statute of Oregon, after providing for service of summons upon parties or their representatives, personally or at their residence, declares that when service cannot be thus made, and the defendant, after due diligence, cannot be found within the State, and "that fact appears, by affidavit, to the satisfaction of the court or judge thereof, and it, in like manner, appears that a cause of action exists against the defendant, or that he is a proper party to an action relating to real property in the State, such court or judge may grant an order that the service be made by publication of summons, . . . when the defendant is not a resident of the State, but has property therein, and the court has jurisdiction of the subject of the action," — the order to designate a newspaper of the county where the action is commenced in which the publication shall be made, — and that proof of such publication shall be "the affidavit of the printer, or his foreman, or his principal clerk." *Held*, that defects in the affidavit for the order can only be taken advantage of on appeal, or by some other direct proceeding, and cannot be urged to impeach the judgment collaterally; and that the provision as to proof of the publication is satisfied when the affidavit is made by the editor of the paper.

2. A personal judgment is without any validity, if it be rendered by a State court in an action upon a money-demand against a non-resident of the State, who was served by a publication of summons, but upon whom no personal service of process within the State was made, and who did not appear; and no title to property passes by a sale under an execution issued upon such a judgment.

3. The State, having within her territory property of a non-resident, may hold and appropriate it to satisfy the claims of her citizens against him; and her tribunals may inquire into his obligations to the extent necessary to control the disposition of that property. If he has no property in the State, there is nothing upon which her tribunals can adjudicate.

4. Substituted service by publication, or in any other authorized form, is sufficient to inform a non-resident of the object of proceedings taken, where

property is once brought under the control of the court by seizure or some equivalent act; but where the suit is brought to determine his personal rights and obligations, that is, where it is merely *in personam*, such service upon him is ineffectual for any purpose.

5. Process from the tribunals of one State cannot run into another State, and summon a party there domiciled to respond to proceedings against him; and publication of process or of notice within the State in which the tribunal sits cannot create any greater obligation upon him to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability.

6. Except in cases affecting the personal *status* of the plaintiff, and in those wherein that mode of service may be considered to have been assented to in advance, the substituted service of process by publication, allowed by the law of Oregon and by similar laws in other States where actions are brought against non-residents, is effectual only where, in connection with process against the person for commencing the action, property in the State is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem*.

7. Whilst the courts of the United States are not foreign tribunals in their relations to the State courts, they are tribunals of a different sovereignty, and are bound to give to a judgment of a State court only the same faith and credit to which it is entitled in the courts of another State.

8. The term, "due process of law," when applied to judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a competent tribunal to pass upon their subject-matter; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or by his voluntary appearance.

ERROR to the Circuit Court of the United States for the District of Oregon.

This action was brought by Neff against Pennoyer for the recovery of a tract of land situated in Multnomah County, Oregon. Pennoyer, in his answer, denied Neff's title and right to possession, and set up a title in himself.

By consent of parties, and in pursuance of their written stipulation filed in the case, the cause was tried by the court, and a special verdict given, upon which judgment was rendered in favor of Neff; whereupon Pennoyer sued out this writ of error.

The parties respectively claimed title as follows: Neff, under a patent issued to him by the United States, March 19,

1866; and Pennoyer, by virtue of a sale made by the sheriff of said county, under an execution sued out upon a judgment against Neff, rendered Feb. 19, 1866, by the Circuit Court for said county, in an action wherein he was defendant, and J. H. Mitchell was plaintiff. Neff was then a non-resident of Oregon.

In *Mitchell* v. *Neff*, jurisdiction of Neff was obtained by service of summons by publication. Pennoyer offered in evidence duly certified copies of the complaint, summons, order for publication of summons, affidavit of service by publication, and the judgment in that case; to the introduction of which papers the plaintiff objected, because, 1, said judgment is *in personam*, and appears to have been given without the appearance of the defendant in the action, or personal service of the summons upon him, and while he was a non-resident of the State, and is, therefore, void; 2, said judgment is not *in rem*, and, therefore, constitutes no basis of title in the defendant; 3, said copies of complaint, &c., do not show jurisdiction to give the judgment alleged, either *in rem* or *personam*; and, 4, it appears from said papers that no proof of service by publication was ever made, the affidavit thereof being made by the "editor" of the "Pacific Christian Advocate," and not by "the printer, or his foreman or principal clerk." The court admitted the evidence subject to the objections.

The finding of the court in regard to the facts bearing upon the asserted jurisdiction of the State court is as follows:—

That on Nov. 13, 1865, Mitchell applied to said Circuit Court, upon his own affidavit of that date, for an order allowing the service of the summons in said action to be made upon, Neff, by publication thereof; whereupon said court made said order, in the words following: "Now, at this day, comes the plaintiff in his proper person, and by his attorneys, Mitchell and Dolph, and files affidavit of plaintiff, and motion for an order of publication of summons, as follows, to wit: 'Now comes the plaintiff, by his attorneys, and upon the affidavit of plaintiff, herewith filed, moves the court for an order of publication of summons against defendant, as required by law, he being a non-resident;' and it appearing to the satisfaction of the court that the defendant cannot, after due diligence, be

found in this State, and that he is a non-resident thereof, that his place of residence is unknown to plaintiff, and cannot, with reasonable diligence, be ascertained by him, and that the plaintiff has a cause of action against defendant, and that defendant has property in this county and State, it is ordered and adjudged by the court that service of the summons in this action be made by publication for six weeks successively in the 'Pacific Christian Advocate,' a weekly newspaper published in Multnomah County, Oregon, and this action is continued for such service." That the affidavit of plaintiff, referred to in said order, is in the words following: "I, J. H. Mitchell, being first duly sworn, say that the defendant, Marcus Neff, is a non-resident of this State; that he resides somewhere in the State of California, at what place affiant knows not, and he cannot be found in this State; that plaintiff has a just cause of action against defendant for a money-demand on account; that this court has jurisdiction of such action; that the defendant has property in this county and State." That the complaint in said action was verified and filed on Nov. 3, 1865, and contained facts tending to prove that at that date said Mitchell had a cause of action against said Neff for services as an attorney, performed "between Jan. 1, 1862, and May 15, 1863." That the entry of judgment in said action contained the following averments: "And it appearing to the court that the defendant was, at the time of the commencement of this action, and ever since has been, a non-resident of this State; and it further appearing that he has property in this State, and that defendant had notice of the pendency of this action by publication of the summons for six successive weeks in the 'Pacific Christian Advocate,' a weekly newspaper of general circulation published in Multnomah County, State of Oregon, the last issue of which was more than twenty days before the first day of this term." That the affidavit showing the publication of the summons in the "Advocate" aforesaid was made as stated therein by the "editor" of that paper. That said complaint, summons, affidavit of Mitchell and of the "editor" of the "Advocate" aforesaid, and entry of judgment, were in the judgment roll, made up by the clerk in the case, but the order for publication of the summons aforesaid was not placed in said roll

by said clerk, but remains on the files of said court; and that when said court made said order for publication, and gave said judgment against Neff, the only evidence it had before it to prove the facts necessary to give it jurisdiction therefor, and particularly to authorize it to find and state that Neff's residence was unknown to Mitchell, and could not, with reasonable diligence, be ascertained by him, and that Neff had notice of the pendency of said action by the publication of the summons as aforesaid, was, so far as appears by the said roll and the records and files of the said court, the said complaint and affidavits of Mitchell and the editor of the "Advocate."

The statute of Oregon at the time of the commencement of the suit against Neff was as follows: —

"SECT. 55. When service of the summons cannot be made as prescribed in the last preceding section, and the defendant, after due diligence, cannot be found within the State, and when that fact appears, by affidavit, to the satisfaction of the court or judge thereof, or justice in an action in a justice's court, and it also appears that a cause of action exists against the defendant, or that he is a proper party to an action relating to real property in this State, such court or judge or justice may grant an order that the service be made by publication of summons in either of the following cases: . . .

"3. When the defendant is not a resident of the State, but has property therein, and the court has jurisdiction of the subject of the action.

"SECT. 56. The order shall direct the publication to be made in a newspaper published in the county where the action is commenced, and, if no newspaper be published in the county, then in a newspaper to be designated as most likely to give notice to the person to be served, and for such length of time as may be deemed reasonable, not less than once a week for six weeks. In case of publication, the court or judge shall also direct a copy of the summons and complaint to be forthwith deposited in the post-office, directed to the defendant, at his place of residence, unless it shall appear that such residence is neither known to the party making the application, nor can, with reasonable diligence, be ascertained by him. When publication is ordered, personal service of a copy of the summons and complaint out of the State shall be equivalent to publication and deposit in the post-office. In either case, the defendant shall appear and answer by the first day of the term following the

expiration of the time prescribed in the order for publication; and, if he does not, judgment may be taken against him for want thereof. In case of personal service out of the State, the summons shall specify the time prescribed in the order for publication.

"SECT. 57. The defendant against whom publication is ordered, or his personal representatives, on application and sufficient cause shown, at any time before judgment, shall be allowed to defend the action; and the defendant against whom publication is ordered, or his representatives, may in like manner, upon good cause shown, and upon such terms as may be proper, be allowed to defend after judgment, and within one year after the entry of such judgment, on such terms as may be just; and, if the defence be successful, and the judgment or any part thereof have been collected or otherwise enforced, such restitution may thereupon be compelled as the court shall direct. But the title to property sold upon execution issued on such judgment to a purchaser in good faith shall not be thereby affected."

"SECT. 60. Proof of the service of summons shall be, in case of publication, the affidavit of the printer, or his foreman, or his principal clerk, showing the same."

*Mr. W. F. Trimble* for the plaintiff in error.

*Mr. James K. Kelly, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action to recover the possession of a tract of land, of the alleged value of $15,000, situated in the State of Oregon. The plaintiff asserts title to the premises by a patent of the United States issued to him in 1866, under the act of Congress of Sept. 27, 1850, usually known as the Donation Law of Oregon. The defendant claims to have acquired the premises under a sheriff's deed, made upon a sale of the property on execution issued upon a judgment recovered against the plaintiff in one of the circuit courts of the State. The case turns upon the validity of this judgment.

It appears from the record that the judgment was rendered in February, 1866, in favor of J. H. Mitchell, for less than $300, including costs, in an action brought by him upon a demand for services as an attorney; that, at the time the action was commenced and the judgment rendered, the defendant therein, the plaintiff here, was a non-resident of the State;

that he was not personally served with process, and did not appear therein; and that the judgment was entered upon his default in not answering the complaint, upon a constructive service of summons by publication.

The Code of Oregon provides for such service when an action is brought against a non-resident and absent defendant, who has property within the State. It also provides, where the action is for the recovery of money or damages, for the attachment of the property of the non-resident. And it also declares that no natural person is subject to the jurisdiction of a court of the State, "unless he appear in the court, or be found within the State, or be a resident thereof, or have property therein; and, in the last case, only to the extent of such property at the time the jurisdiction attached." Construing this latter provision to mean, that, in an action for money or damages where a defendant does not appear in the court, and is not found within the State, and is not a resident thereof, but has property therein, the jurisdiction of the court extends only over such property, the declaration expresses a principle of general, if not universal, law. The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as mere abuse. *D'Arcy* v. *Ketchum et al.,* 11 How. 165. In the case against the plaintiff, the property here in controversy sold under the judgment rendered was not attached, nor in any way brought under the jurisdiction of the court. Its first connection with the case was caused by a levy of the execution. It was not, therefore, disposed of pursuant to any adjudication, but only in enforcement of a personal judgment, having no relation to the property, rendered against a non-resident without service of process upon him in the action, or his appearance therein. The court below did not consider that an attachment of the property was essential to its jurisdiction or to the validity of the sale, but held that the judgment was invalid from defects in the affidavit upon which the order of publication was obtained, and in the affidavit by which the publication was proved.

There is some difference of opinion among the members of this court as to the rulings upon these alleged defects. The majority are of opinion that inasmuch as the statute requires, for an order of publication, that certain facts shall appear by affidavit *to the satisfaction of the court or judge*, defects in such affidavit can only be taken advantage of on appeal, or by some other direct proceeding, and cannot be urged to impeach the judgment collaterally. The majority of the court are also of opinion that the provision of the statute requiring proof of the publication in a newspaper to be made by the "affidavit of the printer, or his foreman, or his principal clerk," is satisfied when the affidavit is made by the editor of the paper. The term "printer," in their judgment, is there used not to indicate the person who sets up the type, — he does not usually have a foreman or clerks, — it is rather used as synonymous with publisher. The Supreme Court of New York so held in one case; observing that, for the purpose of making the required proof, publishers were "within the spirit of the statute." *Bunce* v. *Reed*, 16 Barb. (N. Y.) 350. And, following this ruling, the Supreme Court of California held that an affidavit made by a "publisher and proprietor" was sufficient. *Sharp* v. *Daugney*, 33 Cal. 512. The term "editor," as used when the statute of New York was passed, from which the Oregon law is borrowed, usually included not only the person who wrote or selected the articles for publication, but the person who published the paper and put it into circulation. Webster, in an early edition of his Dictionary, gives as one of the definitions of an editor, a person "who superintends the publication of a newspaper." It is principally since that time that the business of an editor has been separated from that of a publisher and printer, and has become an independent profession.

If, therefore, we were confined to the rulings of the court below upon the defects in the affidavits mentioned, we should be unable to uphold its decision. But it was also contended in that court, and is insisted upon here, that the judgment in the State court against the plaintiff was void for want of personal service of process on him, or of his appearance in the action in which it was rendered, and that the premises in controversy could not be subjected to the payment of the demand.

of a resident creditor except by a proceeding *in rem;* that is, by a direct proceeding against the property for that purpose. If these positions are sound, the ruling of the Circuit Court as to the invalidity of that judgment must be sustained, notwithstanding our dissent from the reasons upon which it was made. And that they are sound would seem to follow from two well-established principles of public law respecting the jurisdiction of an independent State over persons and property. The several States of the Union are not, it is true, in every respect independent, many of the rights and powers which originally belonged to them being now vested in the government created by the Constitution. But, except as restrained and limited by that instrument, they possess and exercise the authority of independent States, and the principles of public law to which we have referred are applicable to them. One of these principles is, that every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. As a consequence, every State has the power to determine for itself the civil *status* and capacities of its inhabitants; to prescribe the subjects upon which they may contract, the forms and solemnities with which their contracts shall be executed, the rights and obligations arising from them, and the mode in which their validity shall be determined and their obligations enforced; and also to regulate the manner and conditions upon which property situated within such territory, both personal and real, may be acquired, enjoyed, and transferred. The other principle of public law referred to follows from the one mentioned; that is, that no State can exercise direct jurisdiction and authority over persons or property without its territory. Story, Confl. Laws, c. 2; Wheat. Int. Law, pt. 2, c. 2. The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. "Any exertion of authority of this sort beyond this limit," says Story, "is a mere nullity, and incapable of binding

such persons or property in any other tribunals." Story, Confl. Laws, sect. 539.

But as contracts made in one State may be enforceable only in another State, and property may be held by non-residents, the exercise of the jurisdiction which every State is admitted to possess over persons and property within its own territory will often affect persons and property without it. To any influence exerted in this way by a State affecting persons resident or property situated elsewhere, no objection can be justly taken; whilst any direct exertion of authority upon them, in an attempt to give ex-territorial operation to its laws, or to enforce an ex-territorial jurisdiction by its tribunals, would be deemed an encroachment upon the independence of the State in which the persons are domiciled or the property is situated, and be resisted as usurpation.

Thus the State, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with; and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the State within which it is situated. *Penn* v. *Lord Baltimore*, 1 Ves. 444; *Massie* v. *Watts*, 6 Cranch, 148; *Watkins* v. *Holman*, 16 Pet. 25; *Corbett* v. *Nutt*, 10 Wall. 464.

So the State, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the State where the owners are domiciled. Every State owes protection to its own citizens; and, when non-residents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the State's jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident

have no property in the State, there is nothing upon which the tribunals can adjudicate.

These views are not new. They have been frequently expressed, with more or less distinctness, in opinions of eminent judges, and have been carried into adjudications in numerous cases. Thus, in *Picquet* v. *Swan*, 5 Mas. 35, Mr. Justice Story said : —

" Where a party is within a territory, he may justly be subjected to its process, and bound personally by the judgment pronounced on such process against him. Where he is not within such territory, and is not personally subject to its laws, if, on account of his supposed or actual property being within the territory, process by the local laws may, by attachment, go to compel his appearance, and for his default to appear judgment may be pronounced against him, such a judgment must, upon general principles, be deemed only to bind him to the extent of such property, and cannot have the effect of a conclusive judgment *in personam*, for the plain reason, that, except so far as the property is concerned, it is a judgment *coram non judice*."

And in *Boswell's Lessee* v. *Otis*, 9 How. 336, where the title of the plaintiff in ejectment was acquired on a sheriff's sale, under a money decree rendered upon publication of notice against non-residents, in a suit brought to enforce a contract relating to land, Mr. Justice McLean said : —

" Jurisdiction is acquired in one of two modes: first, as against the person of the defendant by the service of process; or, secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case, the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be substantially a proceeding *in rem*."

These citations are not made as authoritative expositions of the law; for the language was perhaps not essential to the decision of the cases in which it was used, but as expressions of the opinion of eminent jurists. But in *Cooper* v. *Reynolds*, reported in the 10th of Wallace, it was essential to the disposition of the case to declare the effect of a personal action against an absent party, without the jurisdiction of the court, not served

with process or voluntarily submitting to the tribunal, when it was sought to subject his property to the payment of a demand of a resident complainant; and in the opinion there delivered we have a clear statement of the law as to the efficacy of such actions, and the jurisdiction of the court over them. In that case, the action was for damages for alleged false imprisonment of the plaintiff; and, upon his affidavit that the defendants had fled from the State, or had absconded or concealed themselves so that the ordinary process of law could not reach them, a writ of attachment was sued out against their property. Publication was ordered by the court, giving notice to them to appear and plead, answer or demur, or that the action would be taken as confessed and proceeded in *ex parte* as to them. Publication was had; but they made default, and judgment was entered against them, and the attached property was sold under it. The purchaser having been put into possession of the property, the original owner brought ejectment for its recovery. In considering the character of the proceeding, the court, speaking through Mr. Justice Miller, said: —

"Its essential purpose or nature is to establish, by the judgment of the court, a demand or claim against the defendant, and subject his property lying within the territorial jurisdiction of the court to the payment of that demand. But the plaintiff is met at the commencement of his proceedings by the fact that the defendant is not within the territorial jurisdiction, and cannot be served with any process by which he can be brought personally within the power of the court. For this difficulty the statute has provided a remedy. It says that, upon affidavit being made of that fact, a writ of attachment may be issued and levied on any of the defendant's property, and a publication may be made warning him to appear; and that thereafter the court may proceed in the case, whether he appears or not. If the defendant appears, the cause becomes mainly a suit *in personam*, with the added incident, that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the court. But if there is no appearance of the defendant, and no service of process on him, the case becomes in its essential nature a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff. That such is

the nature of this proceeding in this latter class of cases is clearly evinced by two well-established propositions : first, the judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court, or in any other ; nor can it be used as evidence in any other proceeding not affecting the attached property ; nor could the costs in that proceeding be collected of defendant out of any other property than that attached in the suit. Second, the court, in such a suit, cannot proceed, unless the officer finds some property of defendant on which to levy the writ of attachment. A return that none can be found is the end of the case, and deprives the court of further jurisdiction, though the publication may have been duly made and proven in court."

The fact that the defendants in that case had fled from the State, or had concealed themselves, so as not to be reached by the ordinary process of the court, and were not non-residents, was not made a point in the decision. The opinion treated them as being without the territorial jurisdiction of the court ; and the grounds and extent of its authority over persons and property thus situated were considered, when they were not brought within its jurisdiction by personal service or voluntary appearance.

The writer of the present opinion considered that some of the objections to the preliminary proceedings in the attachment suit were well taken, and therefore dissented from the judgment of the court ; but to the doctrine declared in the above citation he agreed, and he may add, that it received the approval of all the judges. It is the only doctrine consistent with proper protection to citizens of other States. If, without personal service, judgments *in personam*, obtained *ex parte* against non-residents and absent parties, upon mere publication of process, which, in the great majority of cases, would never be seen by the parties interested, could be upheld and enforced, they would be the constant instruments of fraud and oppression. Judgments for all sorts of claims upon contracts and for torts, real or pretended, would be thus obtained, under which property would be seized, when the evidence of the transactions upon

which they were founded, if they ever had any existence, had perished.

Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability.

The want of authority of the tribunals of a State to adjudicate upon the obligations of non-residents, where they have no property within its limits, is not denied by the court below: but the position is assumed, that, where they have property within the State, it is immaterial whether the property is in the first instance brought under the control of the court by attachment or some other equivalent act, and afterwards applied by its judgment to the satisfaction of demands against its owner; or such demands be first established in a personal action, and

the property of the non-resident be afterwards seized and sold on execution. But the answer to this position has already been given in the statement, that the jurisdiction of the court to inquire into and determine his obligations at all is only incidental to its jurisdiction over the property. Its jurisdiction in that respect cannot be made to depend upon facts to be ascertained after it has tried the cause and rendered the judgment. If the judgment be previously void, it will not become valid by the subsequent discovery of property of the defendant, or by his subsequent acquisition of it. The judgment, if void when rendered, will always remain void: it cannot occupy the doubtful position of being valid if property be found, and void if there be none. Even if the position assumed were confined to cases where the non-resident defendant possessed property in the State at the commencement of the action, it would still make the validity of the proceedings and judgment depend upon the question whether, before the levy of the execution, the defendant had or had not disposed of the property. If before the levy the property should be sold, then, according to this position, the judgment would not be binding. This doctrine would introduce a new element of uncertainty in judicial proceedings. The contrary is the law : the validity of every judgment depends upon the jurisdiction of the court before it is rendered, not upon what may occur subsequently. In Webster v. Reid, reported in 11th of Howard, the plaintiff claimed title to land sold under judgments recovered in suits brought in a territorial court of Iowa, upon publication of notice under a law of the territory, without service of process ; and the court said : —

"These suits were not a proceeding in rem against the land, but were in personam against the owners of it. Whether they all resided within the territory or not does not appear, nor is it a matter of any importance. No person is required to answer in a suit on whom process has not been served, or whose property has not been attached. In this case, there was no personal notice, nor an attachment or other proceeding against the land, until after the judgments. The judgments, therefore, are nullities, and did not authorize the executions on which the land was sold."

The force and effect of judgments rendered against non-residents without personal service of process upon them, or their voluntary appearance, have been the subject of frequent consideration in the courts of the United States and of the several States, as attempts have been made to enforce such judgments in States other than those in which they were rendered, under the provision of the Constitution requiring that " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State ;" and the act of Congress providing for the mode of authenticating such acts, records, and proceedings, and declaring that, when thus authenticated, " they shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are or shall be taken." In the earlier cases, it was supposed that the act gave to all judgments the same effect in other States which they had by law in the State where rendered. But this view was afterwards qualified so as to make the act applicable only when the court rendering the judgment had jurisdiction of the parties and of the subject-matter, and not to preclude an inquiry into the jurisdiction of the court in which the judgment was rendered, or the right of the State itself to exercise authority over the person or the subject-matter. *M'Elmoyle* v. *Cohen*, 13 Pet. 312. In the case of *D'Arcy* v. *Ketchum*, reported in the 11th of Howard, this view is stated with great clearness. That was an action in the Circuit Court of the United States for Louisiana, brought upon a judgment rendered in New York under a State statute, against two joint debtors, only one of whom had been served with process, the other being a non-resident of the State. The Circuit Court held the judgment conclusive and binding upon the non-resident not served with process; but this court reversed its decision, observing, that it was a familiar rule that countries foreign to our own disregarded a judgment merely against the person, where the defendant had not been served with process nor had a day in court; that national comity was never thus extended; that the proceeding was deemed an illegitimate assumption of power, and resisted as mere abuse; that no faith and credit or force and effect had been given to such judgments by any State of the Union, so far

as known; and that the State courts had uniformly, and in many instances, held them to be void. "The international law," said the court, "as it existed among the States in 1790, was that a judgment rendered in one State, assuming to bind the person of a citizen of another, was void within the foreign State, when the defendant had not been served with process or voluntarily made defence; because neither the legislative jurisdiction nor that of courts of justice had binding force." And the court held that the act of Congress did not intend to declare a new rule, or to embrace judicial records of this description. As was stated in a subsequent case, the doctrine of this court is, that the act "was not designed to displace that principle of natural justice which requires a person to have notice of a suit before he can be conclusively bound by its result, nor those rules of public law which protect persons and property within one State from the exercise of jurisdiction over them by another." *The Lafayette Insurance Co.* v. *French et al.*, 18 How. 404.

This whole subject has been very fully and learnedly considered in the recent case of *Thompson* v. *Whitman*, 18 Wall. 457, where all the authorities are carefully reviewed and distinguished, and the conclusion above stated is not only reaffirmed, but the doctrine is asserted, that the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction against its recital of their existence. In all the cases brought in the State and Federal courts, where attempts have been made under the act of Congress to give effect in one State to personal judgments rendered in another State against non-residents, without service upon them, or upon substituted service by publication, or in some other form, it has been held, without an exception, so far as we are aware, that such judgments were without any binding force, except as to property, or interests in property, within the State, to reach and affect which was the object of the action in which the judgment was rendered, and which property was brought under control of the court in connection with the process against the person. The proceeding in such cases, though in the form of a personal action, has been uniformly treated, where service was not obtained, and the party did not volunta-

rily appear, as effectual and binding merely as a proceeding *in rem*, and as having no operation beyond the disposition of the property, or some interest therein. And the reason assigned for this conclusion has been that which we have already stated, that the tribunals of one State have no jurisdiction over persons beyond its limits, and can inquire only into their obligations to its citizens when exercising its conceded jurisdiction over their property within its limits. In *Bissell* v. *Briggs*, decided by the Supreme Court of Massachusetts as early as 1813, the law is stated substantially in conformity with these views. In that case, the court considered at length the effect of the constitutional provision, and the act of Congress mentioned, and after stating that, in order to entitle the judgment rendered in any court of the United States to the full faith and credit mentioned in the Constitution, the court must have had jurisdiction not only of the cause, but of the parties, it proceeded to illustrate its position by observing, that, where a debtor living in one State has goods, effects, and credits in another, his creditor living in the other State may have the property attached pursuant to its laws, and, on recovering judgment, have the property applied to its satisfaction; and that the party in whose hands the property was would be protected by the judgment in the State of the debtor against a suit for it, because the court rendering the judgment had jurisdiction to that extent; but that if the property attached were insufficient to satisfy the judgment, and the creditor should sue on that judgment in the State of the debtor, he would fail, because the defendant was not amenable to the court rendering the judgment. In other words, it was held that over the property within the State the court had jurisdiction by the attachment, but had none over his person; and that any determination of his liability, except so far as was necessary for the disposition of the property, was invalid.

In *Kilbourn* v. *Woodworth*, 5 Johns, (N. Y.) 37, an action of debt was brought in New York upon a personal judgment recovered in Massachusetts. The defendant in that judgment was not served with process; and the suit was commenced by the attachment of a bedstead belonging to the defendant, accompanied with a summons to appear, served on his wife after she had left her place in Massachusetts. The court held that

the attachment bound only the property attached as a proceeding *in rem*, and that it could not bind the defendant, observing, that to bind a defendant personally, when he was never personally summoned or had notice of the proceeding, would be contrary to the first principles of justice, repeating the language in that respect of Chief Justice DeGrey, used in the case of *Fisher* v. *Lane*, 3 Wils. 297, in 1772.   See also *Borden* v. *Fitch*, 15 Johns. (N. Y.) 121, and the cases there cited, and *Harris* v. *Hardeman et al.*, 14 How. 334.   To the same purport decisions are found in all the State courts.   In several of the cases, the decision has been accompanied with the observation that a personal judgment thus recovered has no binding force without the State in which it is rendered, implying that in such State it may be valid and binding.   But if the court has no jurisdiction over the person of the defendant by reason of his non-residence, and, consequently, no authority to pass upon his personal rights and obligations; if the whole proceeding, without service upon him or his appearance, is *coram non judica* and void; if to hold a defendant bound by such a judgment is contrary to the first principles of justice, — it is difficult to see how the judgment can legitimately have any force within the State.   The language used can be justified only on the ground that there was no mode of directly reviewing such judgment or impeaching its validity within the State where rendered; and that, therefore, it could be called in question only when its enforcement was elsewhere attempted.   In later cases, this language is repeated with less frequency than formerly, it beginning to be considered, as it always ought to have been, that a judgment which can be treated in any State of this Union as contrary to the first principles of justice, and as an absolute nullity, because rendered without any jurisdiction of the tribunal over the party, is not entitled to any respect in the State where rendered.   *Smith* v. *McCutchen*, 38 Mo. 415; *Darrance* v. *Preston*, 18 Iowa, 396; *Hakes* v. *Shupe*, 27 id. 465; *Mitchell's Administrator* v. *Gray*, 18 Ind. 123.

Be that as it may, the courts of the United States are not required to give effect to judgments of this character when any right is claimed under them.   Whilst they are not foreign tribunals in their relations to the State courts, they are tribunals

of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the State courts only the same faith and credit which the courts of another State are bound to give to them.

Since the adoption of the Fourteenth Amendment to the Federal Constitution, the validity of such judgments may be directly questioned, and their enforcement in the State resisted, on the ground that proceedings in a court of justice to deter mine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution — that is, by the law of its creation — to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or his voluntary appearance.

Except in cases affecting the personal *status* of the plaintiff, and cases in which that mode of service may be considered to have been assented to in advance, as hereinafter mentioned, the substituted service of process by publication, allowed by the law of Oregon and by similar laws in other States, where actions are brought against non-residents, is effectual only where, in connection with process against the person for commencing the action, property in the State is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem*. As stated by Cooley in his Treatise on Constitutional Limitations, 405, for any other purpose than to subject the property of a non-resident to valid claims against

him in the State, "due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered."

It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the State, they are substantially proceedings *in rem* in the broader sense which we have mentioned.

It is hardly necessary to observe, that in all we have said we have had reference to proceedings in courts of first instance, and to their jurisdiction, and not to proceedings in an appellate tribunal to review the action of such courts. The latter may be taken upon such notice, personal or constructive, as the State creating the tribunal may provide. They are considered as rather a continuation of the original litigation than the commencement of a new action. *Nations et al.* v. *Johnson et al.*, 24 How. 195.

It follows from the views expressed that the personal judgment recovered in the State court of Oregon against the plaintiff herein, then a non-resident of the State, was without any validity, and did not authorize a sale of the property in controversy.

To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by any thing we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute

right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress. Bish. Marr. and Div., sect. 156.

Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-residents both within and without the State. As was said by the Court of Exchequer in *Vallee* v. *Dumergue,* 4 Exch. 290, " It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them." See also *The Lafayette Insurance Co.* v. *French et al.,* 18 How. 404, and *Gillespie* v. *Commercial Mutual Marine Insurance Co.,* 12 Gray (Mass.), 201. Nor do we doubt that a State, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their

interest subject to the conditions prescribed by law.    *Copin* v.
*Adamson*, Law Rep. 9 Ex. 345.

In the present case, there is no feature of this kind, and, consequently, no consideration of what would be the effect of such legislation in enforcing the contract of a non-resident can arise. The question here respects only the validity of a money judgment rendered in one State, in an action upon a simple contract against the resident of another, without service of process upon him, or his appearance therein.

*Judgment affirmed.*

MR. JUSTICE HUNT dissenting.

I am compelled to dissent from the opinion and judgment of the court, and, deeming the question involved to be important, I take leave to record my views upon it.

The judgment of the court below was placed upon the ground that the provisions of the statute were not complied with. This is of comparatively little importance, as it affects the present case only. The judgment of this court is based upon the theory that the legislature had no power to pass the law in question; that the principle of the statute is vicious, and every proceeding under it void. It, therefore, affects all like cases, past and future, and in every State.

The precise case is this: A statute of Oregon authorizes suits to be commenced by the service of a summons. In the case of a non-resident of the State, it authorizes the service of the summons to be made by publication for not less than six weeks, in a newspaper published in the county where the action is commenced. A copy of the summons must also be sent by mail, directed to the defendant at his place of residence, unless it be shown that the residence is not known and cannot be ascertained. It authorizes a judgment and execution to be obtained in such proceeding. Judgment in a suit commenced by one Mitchell in the Circuit Court of Multnomah County, where the summons was thus served, was obtained against Neff, the present plaintiff; and the land in question, situate in Multnomah County, was bought by the defendant Pennoyer, at a sale upon the judgment in such suit. This court now holds, that, by reason of the absence of a personal service of

the summons on the defendant, the Circuit Court of Oregon had no jurisdiction, its judgment could not authorize the sale of land in said county, and, as a necessary result, a purchaser of land under it obtained no title; that, as to the former owner, it is a case of depriving a person of his property without due process of law.

In my opinion, this decision is at variance with the long-established practice under the statutes of the States of this Union, is unsound in principle, and, I fear, may be disastrous in its effects. It tends to produce confusion in titles which have been obtained under similar statutes in existence for nearly a century; it invites litigation and strife, and over throws a well-settled rule of property.

The result of the authorities on the subject, and the sound conclusions to be drawn from the principles which should govern the decision, as I shall endeavor to show, are these:—

1. A sovereign State must necessarily have such control over the real and personal property actually being within its limits, as that it may subject the same to the payment of debts justly due to its citizens.

2. This result is not altered by the circumstance that the owner of the property is non-resident, and so absent from the State that legal process cannot be served upon him personally.

3. Personal notice of a proceeding by which title to property is passed is not indispensable; it is competent to the State to authorize substituted service by publication or otherwise, as the commencement of a suit against non-residents, the judgment in which will authorize the sale of property in such State.

4. It belongs to the legislative power of the State to determine what shall be the modes and means proper to be adopted to give notice to an absent defendant of the commencement of a suit; and if they are such as are reasonably likely to communicate to him information of the proceeding against him, and are in good faith designed to give him such information, and an opportunity to defend is provided for him in the event of his appearance in the suit, it is not competent to the judiciary to declare that such proceeding is void as not being by due process of law.

5. Whether the property of such non-resident shall be seized

upon attachment as the commencement of a suit which shall be carried into judgment and execution, upon which it shall then be sold, or whether it shall be sold upon an execution and judgment without such preliminary seizure, is a matter not of constitutional power, but of municipal regulation only.

To say that a sovereign State has the power to ordain that the property of non-residents within its territory may be subjected to the payment of debts due to its citizens, if the property is levied upon at the commencement of a suit, but that it has not such power if the property is levied upon at the end of the suit, is a refinement and a depreciation of a great general principle that, in my judgment, cannot be sustained

A reference to the statutes of the different States, and to the statutes of the United States, and to the decided cases, and a consideration of the principles on which they stand, will more clearly exhibit my view of the question.

The statutes are of two classes: first, those which authorize the commencement of actions by publication, accompanied by an attachment which is levied upon property, more or less, of an absent debtor; second, those giving the like mode of commencing a suit without an attachment.

The statute of Oregon relating to publication of summons, *supra*, p. 718, under which the question arises, is nearly a transcript of a series of provisions contained in the New York statute, adopted thirty years since. The latter authorizes the commencement of a suit against a non-resident by the publication of an order for his appearance, for a time not less than six weeks, in such newspapers as shall be most likely to give notice to him, and the deposit of a copy of the summons and complaint in the post-office, directed to him at his residence, if it can be ascertained; and provides for the allowance to defend the action before judgment, and within seven years after its rendition, upon good cause shown, and that, if the defence be successful, restitution shall be ordered. It then declares: "But the title to property sold under such judgment to a purchaser in good faith shall not be thereby affected." Code, sects. 34, 35; 5 Edm. Rev. Stat. of N. Y., pp. 37-39.

Provisions similar in their effect, in authorizing the commencement of suits by attachment against absent debtors, in

which all of the property of the absent debtor, real and personal, not merely that seized upon the attachment, is placed under the control of trustees, who sell it for the benefit of all the creditors, and make just distribution thereof, conveying absolute title to the property sold, have been upon the statute-book of New York for more than sixty years.   2 id., p. 2 and following; 1 Rev. Laws, 1813, p. 157.

The statute of New York, before the Code, respecting proceedings in chancery where absent debtors are parties, had long been in use in that State, and was adopted in all cases of chancery jurisdiction.  Whenever a defendant resided out of the State, his appearance might be compelled by publication in the manner pointed out.  A decree might pass against him, and performance be compelled by sequestration of his real or personal property, or by causing possession of specific property to be delivered, where that relief is sought.  The relief was not confined to cases of mortgage foreclosure, or where there was a specific claim upon the property, but included cases requiring the payment of money as well.  2 Edm. Rev. Stat. N. Y., pp. 193–195; 186, m.

I doubt not that many valuable titles are now held by virtue of the provisions of these statutes.

The statute of California authorizes the service of a summons on a non-resident defendant by publication, permitting him to come in and defend upon the merits within one year after the entry of judgment.  Code, sects. 10,412, 10,473.  In its general character it is like the statutes of Oregon and New York, already referred to.

The Code of Iowa, sect. 2618, that of Nevada, sect. 1093, and that of Wisconsin, are to the same general effect.  The Revised Statutes of Ohio, sects. 70, 75, 2 Swan & Critchfield, provide for a similar publication, and that the defendant may come in to defend within five years after the entry of the judgment, but that the title to property held by any purchaser in good faith under the judgment shall not be affected thereby.

The attachment laws of New Jersey, Nixon Dig. (4th ed.), p. 55, are like those of New York already quoted, by which title may be transferred to all the property of a non-resident debtor.  And the provisions of the Pennsylvania statute regu-

lating proceedings in equity, Brightly's Purden's Dig., p. 5988, sects. 51, 52, give the same authority in substance, and the same result is produced as under the New York statute.

Without going into a wearisome detail of the statutes of the various States, it is safe to say that nearly every State in the Union provides a process by which the lands and other property of a non-resident debtor may be subjected to the payment of his debts, through a judgment or decree against the owner, obtained upon a substituted service of the summons or writ commencing the action.

The principle of substituted service is also a rule of property under the statutes of the United States.

The act of Congress "to amend the law of the District of Columbia in relation to judicial proceedings therein," approved Feb. 23, 1867, 14 Stat. 403, contains the same general provisions. It enacts (sect. 7) that publication may be substituted for personal service, when the defendant cannot be found, in suits for partition, divorce, by attachment, for the foreclosure of mortgages and deeds of trust, and for the enforcement of mechanics' liens and all other liens against real or personal property, and in all actions at law or in equity having for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court.

A following section points out the mode of proceeding, and closes in these words : —

"The decree, besides subjecting the thing upon which the lien has attached to the satisfaction of the plaintiff's demand against the defendant, shall adjudge that the plaintiff recover his demand against the defendant, and that he may have execution thereof as at law." Sect. 10.

A formal judgment against the debtor is thus authorized, by means of which any other property of the defendant within the jurisdiction of the court, in addition to that which is the subject of the lien, may be sold, and the title transferred to the purchaser.

All these statutes are now adjudged to be unconstitutional and void. The titles obtained under them are not of the value

of the paper on which they are recorded, except where a preliminary attachment was issued.

Some of the statutes and several of the authorities I cite go further than the present case requires. In this case, property lying in the State where the suit was brought, owned by the non-resident debtor, was sold upon the judgment against him; and it is on the title to that property that the controversy turns.

The question whether, in a suit commenced like the present one, a judgment can be obtained, which, if sued upon in another State, will be conclusive against the debtor, is not before us; nor does the question arise as to the faith and credit to be given in one State to a judgment recovered in another. The learning on that subject is not applicable. The point is simply whether land lying in the same State may be subjected to process at the end of a suit thus commenced.

It is here necessary only to maintain the principle laid down by Judge Cooley in his work on Constitutional Limitations, p. 404, and cited by Mr. Justice Field in *Galpin* v. *Page*, 3 Sawyer, 93, in these words: —

"The fact that process was not personally served is a conclusive objection to the judgment as a personal claim, unless the defendant caused his appearance to be entered in the attachment proceedings. Where a party has property in a State, and resides elsewhere, his property is justly subject to all valid claims that may exist against him there; but beyond this, due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered."

The learned author does not make it a condition that there should be a preliminary seizure of the property by attachment; he lays down the rule that all a person's property in a State may be subjected to all valid claims there existing against him.

The objection now made, that suits commenced by substituted service, as by publication, and judgments obtained without actual notice to the debtor, are in violation of that constitutional provision that no man shall be deprived of his property "without due process of law," has often been presented.

In *Matter of the Empire City Bank*, 18 N. Y. 199, which

was a statutory proceeding to establish and to enforce the responsibility of the stockholders of a banking corporation, and the proceedings in which resulted in a personal judgment against the stockholders for the amount found due, the eminent and learned Judge Denio, speaking as the organ of the Court of Appeals, says : —

." The notice of hearing is to be personal, or by service at the residence of the parties who live in the county, or by advertisement as to others. It may, therefore, happen that some of the persons who are made liable will, not have received actual notice, and the question is, whether personal service of process or actual notice to the party is essential to constitute due process of law. We have i ot been referred to any adjudication holding that no man's right oi property can be affected by judicial proceedings unless he have personal notice. It may be admitted that a statute which should authorize any debt or damages to be adjudged against a person upon a purely *ex parte* proceeding, without a pretence of notice or any provision for defending, would be a violation of the Constitution, and be void ; but where the legislature has prescribed a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, I am of the opinion that the courts have not the power to pronounce the proceeding illegal. The legislature has uniformly acted upon that understanding of the Constitution."

Numerous provisions of the statutes of the State are commented upon, after which he proceeds : —

" Various prudential regulations are made with respect to these remedies; but it may possibly happen, notwithstanding all these precautions, that a citizen who owes nothing, and has done none of the acts mentioned in the statute, may be deprived of his estate, without any actual knowledge of the process by which it has been taken from him. If we hold, as we must in order to sustain this legislation, that the Constitution does not positively require personal notice in order to constitute a legal proceeding due process of law, it then belongs to the legislature to determine whether the case calls for this kind of exceptional legislation, and what manner of constructive notice shall be sufficient to reasonably apprise the party proceeded against of the legal steps which are taken against him."

In *Happy* v. *Mosher*, 48 id. 313, the court say: —

" An approved definition of due process of law is 'law in its regular administration through courts of justice.' 2 Kent, Com. 13. It need not be a legal proceeding according to the course of the common law, neither must there be personal notice to the party whose property is in question. It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity afforded him to defend."

The same language is used in *Westervelt* v. *Gregg*, 12 id. 202, and in *Campbell* v. *Evans*, 45 id. 356. *Campbell* v. *Evans* and *The Empire City Bank* are cases not of proceedings against property to enforce a lien or claim; but in each of them a personal judgment in damages was rendered against the party complaining.

It is undoubtedly true, that, in many cases where the question respecting due process of law has arisen, the case in hand was that of a proceeding *in rem.* It is true, also, as is asserted, that the process of a State cannot be supposed to run beyond its own territory. It is equally true, however, that, in every instance where the question has been presented, the validity of substituted service, which is used to subject property within the State belonging to a non-resident to a judgment obtained by means thereof, has been sustained. I have found no case in which it is adjudged that a statute must require a preliminary seizure of such property as necessary to the validity of the proceeding against it, or that there must have been a previous specific lien upon it; that is, I have found no case where such has been the judgment of the court upon facts making necessary the decision of the point. On the contrary, in the case of the attachment laws of New York and of New Jersey, which distribute all of the non-resident's property, not merely that levied on by the attachment, and in several of the reported cases already referred to, where the judgment was sustained, neither of these preliminary facts existed.

The case of *Galpin* v. *Page*, reported in 18 Wall. 350, and again in 3 Sawyer, 93, is cited in hostility to the views I have expressed. There may be general expressions which will justify

this suggestion, but the judgment is in harmony with those principles. In the case as reported in this court, it was held that the title of the purchaser under a decree against a non-resident infant was invalid, for two reasons: 1st, That there was no jurisdiction of the proceeding under the statute of California, on account of the entire absence of an affidavit of non-residence, and of diligent inquiry for the residence of the debtor; 2d, the absence of any order for publication in Eaton's case, — both of which are conditions precedent to the jurisdiction of the court to take any action on the subject. The title was held void, also, for the reason that the decree under which it was obtained had been reversed in the State court, and the title was not taken at the sale, nor held then by a purchaser in good faith, the purchase being made by one of the attorneys in the suit, and the title being transferred to his law partner after the reversal of the decree. The court held that there was a failure of jurisdiction in the court under which the plaintiff claimed title, and that he could not recover. The learned justice who delivered the opinion in the Circuit Court and in this court expressly affirms the authority of a State over persons not only, but property as well, within its limits, and this by means of a substituted service. The judgment so obtained, he insists, can properly be used as a means of reaching property within the State, which is thus brought under the control of the court and subjected to its judgment. This is the precise point in controversy in the present action.

The case of *Cooper* v. *Reynolds*, 10 Wall. 308, is cited for the same purpose. There the judgment of the court below, refusing to give effect to a judgment obtained upon an order of publication against a non-resident, was reversed in this court. The suit was commenced, or immediately accompanied (it is not clear which), by an attachment which was levied upon the real estate sold, and for the recovery of which this action was brought. This court sustained the title founded upon the suit commenced against the non-resident by attachment. In the opinion delivered in that case there may be remarks, by way of argument or illustration, tending to show that a judgment obtained in a suit not commenced by the levy of an attachment will not give title to land purchased under it. They are,

however, extra-judicial, the decision itself sustaining the judgment obtained under the State statute by publication.

*Webster* v. *Reid*, 11 How. 437, is also cited. There the action involved the title to certain lands in the State of Iowa, being lands formerly belonging to the half-breeds of the Sac and Fox tribes; and title was claimed against the Indian right under the statutes of June 2, 1838, and January, 1839. By these statutes, commissioners were appointed who were authorized to hear claims for accounts against the Indians, and commence actions for the same, giving a notice thereof of eight weeks in the Iowa " Territorial Gazette," and to enter up judgments which should be a lien on the lands. It was provided that it should not be necessary to name the defendants in the suits, but the words " owners of the half-breed lands lying in Lee County " should be a sufficient designation of the defendants in such suits; and it provided that the trials should be by the court, and not by a jury. It will be observed that the lands were not only within the limits of the territory of Iowa, but that all the Indians who were made defendants under the name mentioned were also residents of Iowa, and, for aught that appears to the contrary, of the very county of Lee in which the proceeding was taken. Non-residence was not a fact in the case. Moreover, they were Indians, and, presumptively, not citizens of any State; and the judgments under which the lands were sold were rendered by the commissioners for their own services under the act.

The court found abundant reasons, six in number, for refusing to sustain the title thus obtained. The act was apparently an attempt dishonestly to obtain the Indian title, and not intended to give a substitution for a personal service which would be likely, or was reasonably designed, to reach the persons to be affected.

The case of *Voorhees* v. *Jackson*, 10 Pet. 449, affirmed the title levied under the attachment laws of Ohio, and laid down the principle of assuming that all had been rightly done by a court having general jurisdiction of the subject-matter.

In *Cooper* v. *Smith*, 25 Iowa, 269, it is said, that where no process is served on the defendant, nor property attached, nor garnishee charged, nor appearance entered, a judgment based

on a publication of the pendency of the suit will be void, and may be impeached, collaterally or otherwise, and forms no bar to a recovery in opposition to it, nor any foundation for a title claimed under it. The language is very general, and goes much beyond the requirement of the case, which was an appeal from a personal judgment obtained by publication against the defendant, and where, as the court say, the petition was not properly verified. All that the court decided was that this judgment should be reversed. This is quite a different question from the one before us. Titles obtained by purchase at a sale upon an erroneous judgment are generally good, although the judgment itself be afterwards reversed. *McGoon* v. *Scales*, 9 Wall. 311.

In *Darrance* v. *Preston*, 18 Iowa, 396, the distinction is pointed out between the validity of a judgment as to the amount realized from the sale of property within the jurisdiction of the court and its validity beyond that amount. *Picquet* v. *Swan*, 5 Mas. 35; *Bissell* v. *Briggs*, 9 Mass. 462; *Ewer* v. *Coffin*, 1 Cush. (Mass.) 23, are cited; but neither of them in its facts touches the question before us.

In Drake on Attachment, the rule is laid down in very general language; but none of the cases cited by him will control the present case. They are the following: —

*Eaton* v. *Bridger*, 33 N. H. 228, was decided upon the peculiar terms of the New Hampshire statute, which forbids the entry of a judgment, unless the debtor was served with process, or actually appeared and answered in the suit. The court say the judgment was "not only unauthorized by law, but rendered in violation of its express provisions."

*Johnson* v. *Dodge* was a proceeding in the same action to obtain a reversal on appeal of the general judgment, and did not arise upon a contest for property sold under the judgment. *Carleton* v. *Washington Insurance Co.*, 35 id. 162, and *Bruce* v. *Cloutman*, 45 id. 37, are to the same effect and upon the same statute.

*Smith* v. *McCutchen*, 38 Mo. 415, was a motion in the former suit to set aside the execution by a garnishee, and it was held that the statute was intended to extend to that class of cases. *Abbott* v. *Shepard*, 44 id. 273, is to the same effect, and is based upon *Smith* v. *McCutchen*, supra.

So in *Eastman* v. *Wadleigh*, 65 Me. 251, the question arose in debt on the judgment, not upon a holding of land purchased under the judgment. It was decided upon the express language of the statute of Maine, strongly implying the power of the legislature to make it otherwise, had they so chosen.

It is said that the case where a preliminary seizure has been made, and jurisdiction thereby conferred, differs from that where the property is seized at the end of the action, in this: in the first case, the property is supposed to be so near to its owner, that, if seizure is made of it, he will be aware of the fact, and have his opportunity to defend, and jurisdiction of the person is thus obtained. This, however, is matter of discretion and of judgment only. Such seizure is not in itself notice to the defendant, and it is not certain that he will by that means receive notice. Adopted as a means of communicating it, and although a very good means, it is not the only one, nor necessarily better than a publication of the pendency of the suit, made with an honest intention to reach the debtor. Who shall assume to say to the legislature, that if it authorizes a particular mode of giving notice to a debtor, its action may be sustained, but, if it adopts any or all others, its action is unconstitutional and void? The rule is universal, that modes, means, questions of expediency or necessity, are exclusively within the judgment of the legislature, and that the judiciary cannot review them. This has been so held in relation to a bank of the United States, to the legal-tender act, and to cases arising under other provisions of the Constitution.

In *Jarvis* v. *Barrett*, 14 Wis. 591, such is the holding. The court say : —

"The essential fact on which the publication is made to depend is property of the defendant in the State, and not whether it has been attached. . . . There is no magic about the writ [of attachment] which should make it the exclusive remedy. The same legislative power which devised it can devise some other, and declare that it shall have the same force and effect. The particular means to be used are always within the control of the legislature, so that the end be not beyond the scope of legislative power."

If the legislature shall think that publication and deposit in the post-office are likely to give the notice, there seems to be

nothing in the nature of things to prevent their adoption in lieu of the attachment. The point of power cannot be thus controlled.

That a State can subject land within its limits belonging to non-resident owners to debts due to its own citizens as it can legislate upon all other local matters; that it can prescribe the mode and process by which it is to be reached, — seems to me very plain.

I am not willing to declare that a sovereign State cannot subject the land within its limits to the payment of debts due to its citizens, or that the power to do so depends upon the fact whether its statute shall authorize the property to be levied upon at the commencement of the suit or at its termination. This is a matter of detail, and I am of opinion, that if reasonable notice be given, with an opportunity to defend when appearance is made, the question of power will be fully satisfied.