Williams, J.
The parties to this suit were married in 18858, in the county of Columbiana where they then resided, and one child was born of the marriage. The husband failed to support the family, left the state, and for more than a year before the commencement of the suit remained wilfully absent, leaving his'family without any means of support. By the death of his father he became the owner of certain real property situated in Columbiana county, and entitled to a distributive share of the personal estate. Thereupon, in May, 1897, the wife commenced the action below in the court of common pleas of Columbiana county, that still being the residence of herself and child, against her husband for alimony, and for the maintenance of the child,then seven years of age. In her petition she set up these facts, specifically described the property, and prayed the allowance, out of the property, of a reasonable amount as alimony, and a sufficient sum .for the support of the child. Upon the filing of the petition a summons and certified copy of the pleading were issued and sent by mail to the defendant at his place of residence, he being then a non-resident of the state. A preliminary injunction was granted to prevent the •defendant from incumbering or disposing of the property. And, in proper time, service by publication was completed and proof thereof duly made to the •court, in conformity with the provisions of the stat *222 ute. Then, the defendant, disclaiming any intention to enter his appearance to the merits of the action, filed and presented his motion to dismiss the suit, for the reason, as stated in the motion, that the court had no jurisdiction of his person, “he not having entered his. appearance, and summons not having been served on him as required by law.” The court overruled his motion, to which he took exception; and on final submission of the case by the plaintiff, a decree was entered allowing her for her alimony and for the support of herself and child, the sum of two hundred dollars to be paid by a specified day, and the further sum of fifteen dollars per month, payable on the first day of each succeeding month until the further order of the court. These amounts, with costs of suit, were decreed to be a charge upon the real property described in the petition, and it, was adjudged that in default of their payment, the property might be sold at the instance of the plaintiff, and the proceeds applied in payment. And, the preliminary injunction was made perpetual. That judgment, which was affirmed by the circuit court, is attacked here on the general ground that the court, was without jurisdiction to render it. The specific objections urged in argument to the jurisdiction of the court, are (1) that in an action of this kind service by publication is not authorized by statute; (2) that if so authorized, the action is one in personam, of which the court could acquire no jurisdiction by constructive service; and (3) that if it be regarded as an action in rein, there was not a seizure of the property which brought it within the control of the court when the judgment was rendered.
In answer to the first one of these objections, counsel for the defendant in error rely upon section 5048 *223 of the Revised Statutes as furnishing the necessary authority for making service by publication on a defendant who is a non-resident of the state, in an action of this kind. That section provides that service may be had by publication “in actions in which it is sought by provisional remedy to take, or appropriate in any way, the property of the defendant, when the defendant is a foreign corporation, or a non-resident of the state.” The difference between counsel in regard to the construction of this clause-of the statute, relates to the meaning and effect of the phrase “appropriate in any way,” it being claimed in behalf of the plaintiff in error that it is limited to cases of appropriation of property by a provisional remedy, which, it is contended, was not pursued in this, case. It seems, however, if that were its proper construction, the phrase would serve no useful purpose in the statute; for the preceding language includes all cases where property is sought to be taken, in any way, by any provisional remedy; and an appropriation of property is a taking of it. Some light may be thrown on the construction of this clause, by a reference to the statute before it was amended into its. present form. The original provision of the code on the subject authorized service by publication, “in actions brought against a non-resident of the state, or a foreign corporation, having in this state property, or debts owing to them, sought to be taken by any of the provisional remedies, or appropriated in any way.” It would scarcely be claimed, we apprehend, that the original section restricted the right of constructive service on non-residents to cases where the appropriation of property was sought in the prosecution of a provisional remedy. Nor do we think the transposition of the phrase in question to the place: *224 it occupies in the present statute, was intended to, ■or does alter its effect. Supplying what is manifestly implied in the statute, it permits, as did the original section, constructive service on non-resident defendants, in actions in which it is sought by a provisional remedy to take their property, or in which it is sought to appropriate the property in any legal proceeding where such appropriation is proper. The same reason exists for the application of the statute to cases of the latter class, as to those of the former.
If the action below was merely one in personam, the judgment cannot be maintained; for, in such an action the court could acquire no jurisdiction to render judgment without personal service on the defendant, or appearance by him in the action. But if it may properly be regarded as an action in rem, the court could undoubtedly obtain jurisdiction, by constructive service, to appropriate the property of the defendant, situated in the county where the action was brought, to the purposes of the action, though it could render no personal judgment on which a general execution could issue, or an action against him be maintained. It is contended this action was of the former character, because, prior to the rendition of any decree for the subjection of the property to the support of the plaintiff and child, it became necessary for the court to inquire into and determine the existence of the marriage relation, the residence of the plaintiff, the ground alleged for the allowance of the alimony, and the amount to be awarded. Cases are cited to sustain this contention which hold that, though ex parte divorce may be obtained on constructive service, alimony cannot be decreed unless the defendant appear, -or has been served with process within the jurisdic *225 tion of the court. So far as we- have examined them, these do not appear to be cases where the defendant had property within the jurisdiction of the court, which it was sought to reach, and have appropriated to the support of the wife, but those only where a general personal judgment for alimony was rendered, or sought. It was said by Mr. Justice Field, in Pennoyer v. NeFf, 95 U. S., 714, 723, that “the state, through its tribunals, may subject property situated within its limits, owned by non-residents, to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. ' Every state owes protection to its own citizens; and, when non-residents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the state’s jurisdiction over the property of the non-residents, situated within its limits that its tribunals can inquire into that nonresident’s obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the state, there is nothing upon which its tribunals can adjudicate.” In suits for divorce, it is conceded, the court acquires jurisdiction by constructive service on a non-resident defendant, to inquire into the residence of the plaintiff, and the existence of the marriage relation, as wrell as the grounds of divorce, before proceeding to decree; and this is necessarily so, for residence of the plaintiff within the jurisdiction of the court is an essential fact, and the existence of marriage must be established before there can be a judgment for its *226 dissolution. The jurisdiction in such cases is supposed to rest upon the ground that the proceeding relates to and determines the personal status of the parties. But that is equally so in cases like the one before us, and we can discover no sufficient reason why, in such a case, jurisdiction may not be conferred by a like mode of service to inquire into and determine the same facts. The plaintiff in her action below, did not seek, nor obtain, a personal judgment against the defendant. She and her child were residents of the county in which her suit was brought. The specific property she asked to have subjected to her support was situated in that county, and she sought no other relief than its appropriation, or such part of it as might be necessary for that purpose, in fulfillment of the defendant’s obligation to her in that behalf. The action and judgment were substantially in rem, in the sense that their direct object was to reach and dispose of property within the jurisdiction of the court.
Finally, it is insisted that, though the action be one in rem, the property was not, by any process, so brought within the control of the court as was necessary to warrant the judgment rendered. The rule on this subject, and the reason for it, are stated in Pennoyer v. Neff, supra, where it is said, that “Substituted service by publication, or any other authorized form, may be sufficient to inform parties of the object of the proceeding taken, where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into *227 the custody of the court, but that he must look to any proceedings authorized by law upon such seizures for its condemnation and sale.” It is not enough that property may be discovered and reached on execution after the judgment is rendered. Control of the property by the court before the rendition of the judgment is essential to the jurisdiction to render it; and if rendered without such jurisdiction, it cannot be made valid by the subsequent seizure of property of the defendant. . But, we do not understand it is necessary, in order to bring the property under the control of the court, that it shall be actually taken on attachment or other writ. Any authorized act by which the court takes charge of property/ or asserts its control over it, is sufficient within the meaning of the rule, for the purposes of jurisdiction. And, though injunction was not the ultimate relief sought by the plaintiff in her action, the preliminary injunction granted her at its commencement, restraining all disposition of the property by the defendant, would be as effectual to apprise him that it was in the custody of the court, as an actual seizure of it on writ. The judgment rendered was made operative only on the property so brought within the control of the court at the beginning of the suit, and is not, in our opinion, void for want of jurisdiction. In Wesner v. O’Brien, 56 Kas., 724, the court went further, and sustained a judgment rendered on constructive service, which appropriated land in that state, of a nonresident defendant, for his wife’s alimony, though the land was not situated in the county where the suit was brought, and no step was taken to bring the property within the control of the court otherwise than by the commencement of the suit and publica *228 tion of the notice. The court said that the “seizure of the land in such a case is little more than a form. The essential matter is that the defendant shall have legal notice of the proposed appropriation, and this is afforded by the publication notice which warns the defendant that one of the purposes of the proceeding is the sequestration of the land. It refers interested parties to the petition in which the land is definitely described, and wherein it is asked that the land be set apart as alimony. A formal seizure is no more essential to the jurisdiction of the court in a proceeding of this kind, than in an action to quiet title to land based alone on constructive service.” It was held in Blanckington v. Blanckington, 141 Mass., 432, that the courts of that commonwealth had jurisdiction in an action brought therein by the wife for the support of herself and child, to make and enforce an order against the property of the husband in that state, for the payment of a sum of money to her for such support, although the only service, of process on the husband was made in another state to which he had removed, and there was no attachment or seizure of the property before judgment. The jurisdiction in such a case is placed, by the court, upon the ground that the proceeding relates to the status of the parties, and the order for the payment of the money is not founded on an isolated obligation, as in case of contract or tort, but upon a continuing duty of the husband growing out of the marital relation, the enforcement of which is necessary to secure the comfort and' maintenance of the party living within the jurisdiction.
It is perhaps needless to say that thére is a strong tendency on the part of the courts to uphold their *229 jurisdiction in cases of this kind. But, if we are correct in our conclusion that the preliminary injunction served to bring the property involved in this action within the control of the court, there is no defect in the judgment below, in any view that may be taken of the case.

Affirmed.