[No. 10572.    Department One.    January 25, 1913.]

FERDINAND J. CLIFFORD, *Respondent*, v. PATEROS TRANSFER
COMPANY, *Appellant*.[1]

PROCESS—SERVICE BY PUBLICATION — JUDGMENT IN REM—EXECU-
TION—PROPERTY SUBJECT—JUSTICE OF THE PEACE—JUDGMENT. Rem.
& Bal. Code, § 1766, providing that in case personal service cannot
be had in a justice court action, by reason of the absence of the de-
fendant from the county in which the action is commenced, serv-
ice may be had by publication of the summons, authorizes only a
judgment *in rem* against the property attached, even if the defend-
ant was a resident of the state; and where the attached property
is not sufficient to satisfy the judgment, no other execution can
issue against other property of the defendant as in the case of per-
sonal judgments.

EXECUTION—PROPERTY SUBJECT—ATTACHMENT—GENERAL EXECU-
TION FOR DEFICIENCY. Rem. & Bal. Code, § 668, providing that if the
proceeds of attached property are insufficient to satisfy the judg-
ment, the sheriff shall proceed to collect the balance as upon an
execution in other cases, applies only where a personal judgment
has been rendered which can be satisfied by general execution.

ATTACHMENT — NATURE — PROCESS—PROCEEDING IN REM.   An at-
tachment is an ancillary proceeding only in cases where jurisdic-
tion of the person is acquired in the main action; and in cases of
service by publication the jurisdiction extends only to the property
attached.

Appeal from a judgment of the superior court for Okano-
gan county, Pendergast, J., entered January 24, 1912, upon
the verdict of a jury rendered in favor of the plaintiff, in
an action for conversion.   Affirmed.

*Chas. T. Borg* and *Chas. R. Sargent*, for appellant.

*Peter McPherson*, for respondent.

PARKER, J.—This is an action to recover damages which
the plaintiff alleges resulted to him from the seizure and sale
of certain of his personal property by a constable of Okano-
gan county, under an execution issued at the instance of this
defendant upon a void judgment rendered in its favor against

[1]Reported in 129 Pac. 369.

the plaintiff, in a justice court of that county. From a verdict and judgment in favor of the plaintiff, the defendant has appealed.

The assignments of error present the single question, Was the judgment rendered in the justice court against respondent, under which appellant caused the seizure and sale of the property of respondent, a valid personal judgment against him, authorizing the seizure and sale of his property in satisfaction thereof, other than his property which was seized by attachment in the action prior to the rendition of the judgment? The facts determinative of this question are not in dispute, and may be briefly stated as follows: In March, 1910, appellant commenced an action against respondent in a justice court of Okanogan county, to recover money due for the care and feed of a team of horses. Appellant caused to be issued a writ of attachment in that action, upon the ground "that defendant (this plaintiff) has absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him." By authority of this writ, a constable of that county levied upon and seized certain personal property of the respondent, and held the same pending the action. Because of respondent's absence from the county, summons in the action was duly served upon him by publication only. Thereafter, respondent not appearing in the action, judgment was rendered against him as prayed for, in the sum of $95.65 and costs. Thereafter execution was issued upon the judgment in usual form, as though the judgment were personal and had been rendered upon personal service of summons. The attached property not being sufficient to satisfy the judgment in full, acting under this execution at the instance of appellant, the constable levied upon and seized other personal property of respondent and sold the same, together with the attached property, to satisfy the judgment. During the pendency of the action in the justice court and until after the seizure and sale of his property under the execution, respondent

was a resident of Okanogan county, but was then absent therefrom in Spokane county.

Counsel for appellant concede the general rule to be that service of summons by publication only, upon a defendant while absent from the territorial jurisdiction of the court from which such summons issues, will not support a personal judgment against such defendant, nor subject any of his personal property to the satisfaction of a judgment rendered upon such service, except such property as has been previously levied upon by attachment or other proper process in the action. Counsel rely, however, upon the provisions of our statute, which they insist render a judgment based upon service by publication sufficient authority to levy upon and subject to its satisfaction any property of the defendant which may be found within the territorial jurisdiction of the court, even though the judgment may not be, in its broadest sense, personal against the defendant. Our attention is called to Rem. & Bal. Code, § 1766, which provides:

"In case personal service cannot be had by reason of the absence of the defendant from the county in which action is sought to be commenced, it shall be proper to publish the summons or notice, with a brief statement of the object and prayer of the claim or complaint, in some weekly newspaper published in the county wherein the action is commenced; or if there is no paper published in such county then in some newspaper published in the nearest adjoining county, which notice shall be published not less than once a week for three weeks prior to the time fixed for the hearing of the cause, which shall not be less than four weeks from the first publication of said notice. Said notice may be substantially as follows:" Then follows form.

There is no specific language in this provision, or elsewhere in our statutes, connecting it in any way with the provisions of our statutes relating to attachment, nor indicating the effect of the judgment which may be rendered upon such a service; and if it were not for the general rule that such a service will not support a personal judgment, there

might be some warrant for concluding that this provision expressed a legislative intent that a judgment based upon such service should have some force and effect beyond ·that of a judgment *in rem* against property attached in the action prior to the rendering thereof. Our attention is also called to Rem. & Bal. Code, § 668, which provides:

"If, after selling all the property attached by him [sheriff or constable] remaining in his hands, and applying the proceeds, deducting his fees, to the payment of the judgment, any balance shall remain due, the sheriff shall proceed to collect such balance as upon an execution in other cases."

It seems plain to us, however, that this provision can have no effect upon the force or effect of the judgment. It is merely a provision prescribing the manner in which the judgment shall be satisfied; and, of course, if it is not such a judgment as may be satisfied by general execution, this provision is of no effect.

It will be of aid in arriving at a correct interpretation of § 1766, above quoted, to notice the general rule touching the force and effect of a judgment rendered upon service by publication only, and the reason upon which it rests. Probably the leading decision in this country upon this subject is that rendered by the supreme court of the United States in *Pennoyer v. Neff*, 95 U. S. 714, wherein there was involved the validity of a judgment of a state court of Oregon, rendered upon service by publication, in so far as there was an attempt to subject the property of the defendant to the satisfaction thereof which was not brought under the control or custody of the court by attachment or other process prior to the rendition of the judgment, the defendant being a nonresident of the state. At page 726, Justice Field, speaking for the court, said:

"If, without personal service, judgments *in personam*, obtained *ex parte* against non-residents and absent parties, upon mere publication of process, which in the great majority of cases, would never be seen by the parties interested,

could be upheld and enforced, they would be the constant instruments of fraud and oppression. Judgments for all sorts of claims upon contracts and for torts, real or pretended, would be thus obtained, under which property would be seized, when the evidence of the transactions upon which they were founded, if they ever had any existence, had perished. Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a nonresident is ineffectual for any purpose. Process from the tribunals of one state cannot run into another state, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the state where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the state, and process published within it, are equally unavailing in proceedings to establish his personal liability. The want of authority of the tribunals of a state to adjudicate upon the obligations of non-residents, where they have no property within its limits, is not denied by the court below; but the position is assumed, that, where they have property within the state, it is immaterial whether the property is in the first instance brought under the control of the court by attachment or some other equivalent act, and afterwards applied by its judgment to the satis-

faction of demands against its owner; or such demands be first established in a personal action, and the property of the non-resident be afterwards seized and sold on execution. But the answer to this position has already been given in the statement, that the jurisdiction of the court to inquire into and determine his obligations at all is only incidental to its jurisdiction over the property. Its jurisdiction in that respect cannot be made to depend upon facts to be ascertained after it has tried the cause and rendered the judgment. If the judgment be previously void, it will not become valid by the subsequent discovery of property of the defendant, or by his subsequent acquisition of it. The judgment if void when rendered, will always remain void; it cannot occupy the doubtful position of being valid if property be found, and void if there be none."

In that case the court was dealing only with a judgment against a nonresident of the state, and it is insisted that this distinguishes the problem there involved from that here involved. But the first part of the remarks of Justice Field above quoted clearly indicates that the rule would apply equally to any defendant whose absence prevented the usual personal service of summons upon him. Unless there can be recognized some sound distinction in principle between actions against nonresidents and actions against residents, the doctrine of this famous decision would seem to be controlling in respondent's favor here. If, under such a judgment and service, a nonresident's property, other than that which is attached in the action prior to the rendition of the judgment, cannot be subjected to the satisfaction thereof, it must be because his rights are superior to the rights of a resident, based upon the mere difference in residence of such defendants. We are clearly of the opinion that there is no such distinction in principle, and that the force and effect of a judgment rendered upon such service is not in the least affected by the place of residence of the one against whom it is rendered. It is the difference between personal and substituted service, there being no appearance by the defendant in the action, which renders the judgment personal or *in rem*.

In *Paxton v. Daniell*, 1 Wash. 19, 23 Pac. 441, this court followed the law as announced in *Pennoyer v. Neff*.

While apparently conceding that the law is as we have indicated, counsel for appellant contend, in substance, that it is the presence within the territorial jurisdiction of the court of the property of the defendant that gives the court jurisdiction to reach such property in the satisfaction of the judgment, rather than the seizure of property of the defendant by attachment or other process before the rendering of the judgment. This contention seems also to be effectually answered by the latter part of Justice Field's remarks above quoted. To meet this view of the general rule, counsel insists that § 1766, above quoted, does not limit the effect of the judgment which may be rendered upon service by publication, and argues that such judgment must, therefore, at least be given force and effect to the extent of reaching all property within the territorial jurisdiction of the court, whether levied upon by attachment prior thereto or not, though the judgment may not, in its broadest sense, be personal so as to be effectual as such beyond the court's territorial jurisdiction in a proper proceeding there instituted to make it so effective. In *Pennoyer v. Neff*, at page 720, it is said:

"The code of Oregon provides for such service when an action is brought against a non-resident and absent defendant, who has property within the state. It also provides, where the action is for the recovery of money or damages, for the attachment of the property of the non-resident. And it also declares that no natural person is subject to the jurisdiction of a court of the state, 'unless he appear in the court, or be found within the state, or be a resident thereof, or have property therein; and, in the last case, only to the extent of such property at the time the jurisdiction attached.' "

This latter provision would seem to furnish some ground for contending that jurisdiction over the property depended only upon its presence within the territorial jurisdiction of the court, rather than upon its seizure by attachment prior

to judgment; yet the decision in that case was directly to the contrary. Our attention has not been called to any such provision in our statutes, and we know of none; hence it seems to us there is here even less ground for such a contention than there was in that case. It seems to us that appellant's contention upon this question rests entirely upon the provisions of § 1766, which relate only to the authorization of, and manner of, service of summons by publication. In view of the firmly established rule, as announced in *Pennoyer v. Neff* and followed by this court, we are constrained to hold that it was not the legislative intent, by the provisions of § 1766, to give effect to a judgment rendered upon such service, beyond that of a proceeding *in rem* against such property of the defendant as may be actually levied upon and seized by attachment or other appropriate process prior to the rendering of the judgment in the case. Had our statutes made some special provision to the contrary, it seems probable that there would be here presented a grave constitutional problem. We express no opinion upon that subject.

Some contention is made rested upon the general rule that an attachment is a proceeding merely ancillary to the action, for the purpose of acquiring a lien upon property to secure such judgment as may be eventually rendered therein. While this is true in actions where the jurisdiction is obtained by personal service upon the defendant within the court's territorial jurisdiction, it is also true that the attachment is one of the principal prerequisites to the court acquiring jurisdiction in the action where service is had upon the defendant by publication only. In such case, the whole proceeding becomes, in substance, a proceeding *in rem* against the property which has been previously attached and thus brought under the control of the court. In such a case, as said by Justice Field in *Pennoyer v. Neff*:

"The jurisdiction of the court to inquire into and determine his [defendant's] obligations at all is only incidental to its jurisdiction over the property."

In other words, while the attachment is merely incidental to the main action in cases of personal service upon the defendant, in cases of substituted service all other proceedings in the action are incidental to the attachment, so far as the jurisdiction of the court in the particular case is concerned.

Some contention is made rested upon the fact that there was an actual seizure by attachment of some of the property of the defendant prior to the rendering of the judgment. We are quite unable to see, however, that such fact renders any aid whatever to the judgment, in so far as its effect upon other property is concerned. It is still a judgment *in rem* against the property previously attached; nothing more.

The judgment is affirmed.

CROW, C. J., MOUNT, GOSE, and CHADWICK, JJ., concur.