## VANDERBILT v. VANDERBILT ET AL.

No. 302.   Argued April 22–23, 1957.—Decided June 24, 1957.

*Sol A. Rosenblatt* argued the cause for petitioner. With him on the brief was *Charles Roden.*

*Monroe J. Winsten* argued the cause for respondents. With him on the brief was *Charles L. Raskin* for Vanderbilt, respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Cornelius Vanderbilt, Jr., petitioner, and Patricia Vanderbilt, respondent, were married in 1948. They separated in 1952 while living in California. The wife moved to New York where she has resided since February 1953. In March of that year the husband filed suit for

divorce in Nevada. This proceeding culminated, in June 1953, with a decree of final divorce which provided that both husband and wife were "freed and released from the bonds of matrimony and all the duties and obligations thereof . . . ." [1] The wife was not served with process in Nevada and did not appear before the divorce court.

In April 1954, Mrs. Vanderbilt instituted an action in a New York court praying for separation from petitioner and for alimony. The New York court did not have personal jurisdiction over him, but in order to satisfy his obligations, if any, to Mrs. Vanderbilt, it sequestered his property within the State.[2] He appeared specially and, among other defenses to the action, contended that the Full Faith and Credit Clause of the United States Constitution [3] compelled the New York court to treat the Nevada divorce as having ended the marriage and as having destroyed any duty of support which he owed the respondent. While the New York court found the Nevada decree valid and held that it had effectively dissolved the marriage, it nevertheless entered an order, under § 1170–b

---

[1] It seems clear that in Nevada the effect of this decree was to put an end to the husband's duty to support the wife—provided, of course, that the Nevada courts had power to do this. *Sweeney* v. *Sweeney,* 42 Nev. 431, 438–439, 179 P. 638, 639–640; *Herrick* v. *Herrick,* 55 Nev. 59, 68, 25 P. 2d 378, 380. See *Estin* v. *Estin,* 334 U. S. 541, 547.

[2] See *Pennington* v. *Fourth Natl. Bank of Cincinnati,* 243 U. S. 269; *Harris* v. *Balk,* 198 U. S. 215.

[3] Art. IV, § 1. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Congress has provided that judgments shall have the same force and effect in every court throughout the United States that they have in the State where they were rendered. 28 U. S. C. § 1738.

of the New York Civil Practice Act,[4] directing petitioner to make designated support payments to respondent. 207 Misc. 294, 138 N. Y. S. 2d 222. The New York Court of Appeals upheld the support order. 1 N. Y. 2d 342, 135 N. E. 2d 553. Petitioner then applied to this Court for certiorari contending that § 1170–b, as applied, is unconstitutional because it contravenes the Full Faith and Credit Clause.[5] We granted certiorari, 352 U. S. 820.

In *Estin* v. *Estin,* 334 U. S. 541, this Court decided that a Nevada divorce court, which had no personal jurisdiction over the wife, had no power to terminate a husband's obligation to provide her support as required in a pre-existing New York separation decree. The factor which distinguishes the present case from *Estin* is that here the wife's right to support had not been reduced to judgment prior to the husband's *ex parte* divorce. In our opinion this difference is not material on the question before us. Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.[6] Here, the Nevada divorce court

---

[4] "In an action for divorce, separation or annulment, . . . where the court refuses to grant such relief by reason of a finding by the court that a divorce . . . declaring the marriage a nullity had previously been granted to the husband in an action in which jurisdiction over the person of the wife was not obtained, the court may, nevertheless, render in the same action such judgment as justice may require for the maintenance of the wife." Gilbert-Bliss' N. Y. Civ. Prac., Vol. 6A, 1956 Cum. Supp., § 1170–b.

[5] The petition for certiorari also raised a number of other contentions. We have considered them and find that they do not justify reversing the decision below.

[6] *Pennoyer* v. *Neff,* 95 U. S. 714, 726–727. If a defendant has property in a State it can adjudicate his obligations, but only to

was as powerless to cut off the wife's support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction. Therefore, the Nevada decree, to the extent it purported to affect the wife's right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition.[7]

Petitioner claims that this case is governed by *Thompson* v. *Thompson,* 226 U. S. 551. For the reasons given in a concurring opinion in *Armstrong* v. *Armstrong,* 350 U. S. 568, 575, at 580–581, the *Thompson* case, insofar as it held that an *ex parte* divorce destroyed alimony rights, can no longer be considered controlling.

*Affirmed.*

THE CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

The question in this case is whether Nevada, which was empowered to grant petitioner a divorce without personal jurisdiction over respondent that must be respected, by command of the Constitution, by every other State, *Williams* v. *North Carolina,* 317 U. S. 287,

---

the extent of his interest in that property. *Pennington* v. *Fourth Natl. Bank of Cincinnati,* 243 U. S. 269; *Harris* v. *Balk,* 198 U. S. 215.

[7] A concurring opinion in *Armstrong* v. *Armstrong,* 350 U. S. 568, 575, and the authorities collected there, set forth in greater detail the reasons underlying this holding. Cf. *Meredith* v. *Meredith,* 96 U. S. App. D. C. 355, 226 F. 2d 257, 69 Harv. L. Rev. 1497.

"A state lacks judicial jurisdiction to absolve a spouse from any duty of support which, under the law of a second state, he may owe the other spouse in the absence of personal jurisdiction over the latter." Restatement, Conflict of Laws, § 116 (2) (Tent. Draft No. 1, 1953), and see Comment f to § 116.

was at the same time empowered by virtue of its domiciliary connection with petitioner to make, incidental to its dissolution of the marriage, an adjudication denying alimony to which sister States must also give full faith and credit. Whatever the answer to the question may be, *Estin* v. *Estin,* 334 U. S. 541, does not supply it. What the Court now states to be "not material" was crucial to the decision in that case, namely, the prior New York support order, which the Court held Nevada was required to respect by virtue of the Full Faith and Credit Clause, Art. IV, § 1, of the Constitution. That this fact was crucial to the Court's decision in that case is made clear by the Court's reference to the prior New York judgment in its two statements of the question presented and more than a half dozen times throughout the course of its opinion. The Court rightly regarded the fact as crucial because of the requirement of Art. IV, § 1, that Nevada give full faith and credit to the prior New York "judicial Proceedings."

The Court now chooses to regard the existence of a prior New York support order as "not material," holding for the first time that "the Nevada divorce court had no power to extinguish any right which [respondent] had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant [citing for this proposition, *Pennoyer* v. *Neff,* 95 U. S. 714, 726–727]." We have thus reached another stage—one cannot say it is the last—in the Court's tortuous course of constitutional adjudication relating to dissolution of the marriage status. Whereas previously only the State of "matrimonial domicile" could grant an *ex parte* divorce and alimony, now any domiciliary State can grant an *ex parte* divorce, but no State, even if domiciliary, can grant alimony *ex parte* when it grants a divorce *ex parte.*

It will make for clarity to give a brief review of the singular history of matrimonial law in this Court since the decision in *Atherton* v. *Atherton,* 181 U. S. 155. In that case, the Court held that a sister State had to give full faith and credit to a divorce granted, on the basis of constructive service, by the matrimonial domicile to a deserted husband. In *Haddock* v. *Haddock,* 201 U. S. 562, the Court refused to extend *Atherton,* holding that a State need not give full faith and credit to a divorce granted *ex parte* to a deserted husband by a domiciliary State other than the matrimonial domicile. These precedents were applied to the incidental claim to alimony in *Thompson* v. *Thompson,* 226 U. S. 551, where the Court held that full faith and credit was to be given to the refusal of the matrimonial domicile to grant alimony when it granted a divorce on the basis of substituted service. Under the pre-*Williams* law, then, the same jurisdictional rules applied to the dissolution of the marriage tie and to an incidental adjudication denying alimony. Not only the adjudication of divorce but also the adjudication denying alimony by the matrimonial domicile was required to be given full faith and credit despite the lack of personal jurisdiction over the other spouse.

In *Williams* v. *North Carolina, I,* 317 U. S. 287, the scope of Art. IV, § 1, was found to require full faith and credit to be given to a divorce granted *ex parte* by any State where one spouse was domiciled. The limitation of *ex parte* divorces to the matrimonial domicile imposed by *Haddock* v. *Haddock* was rejected as being based on "fiction." *Williams* v. *North Carolina, II,* 325 U. S. 226, made it clear that full faith and credit was required to be given only if the granting State was actually a domiciliary State, that the finding on this issue could not be foreclosed by the decreeing State, and that it could be readjudicated later by another State. But this restriction of *Williams II* was considerably weakened

when the Court held that a sister State, no matter how great its interest because of its own social policy, was precluded from relitigating the existence of the jurisdictional facts underlying a divorce when both parties had merely made an appearance in the original divorce proceeding. *Sherrer* v. *Sherrer*, 334 U. S. 343, and *Coe* v. *Coe*, 334 U. S. 378. This was so even if the collateral attack were made by a third party who had not appeared in the original proceeding and who had independent interests. *Johnson* v. *Muelberger*, 340 U. S. 581.

The decisions from *Williams I* through *Johnson* resulted in a broad extension of the scope of the Full Faith and Credit Clause. *Haddock* v. *Haddock* was rejected, not because it gave too little respect to the rights of the absent spouse, but rather because it gave too much respect to those rights, and not enough to the rights of the other spouse and his or her domiciliary State. The interests of the absent spouses were subordinated to the interests of the other spouses and their domicile of divorce in *Williams I*, and the interests of a State that was allegedly both pre-divorce and post-divorce domicile were subordinated to the interest of the temporary "domicile" of divorce in *Sherrer* and *Coe*.

One might have expected that since *Thompson* v. *Thompson, supra,* was based on *Haddock* v. *Haddock,* it would have suffered the same fate. But no. The law is not so logical. The Court shrinks from applying *Williams I* to *Thompson*. In fact, we are now told that the vice of *Thompson* v. *Thompson* is just the opposite of that of *Haddock* v. *Haddock: Thompson* paid too little respect to the rights of the absent spouse and too much to the rights of the other spouse and his domicile. And so, as compensation, the interests of the absent spouse, which the Court subordinated so far as the breaking up of the marital relation was concerned in *Williams I*, are now to be enlarged, so far as alimony is concerned. The require-

ment of *Pennoyer* v. *Neff,* 95 U. S. 714, that there must be personal jurisdiction in an action to recover a judgment for personal services rendered, was before the Court in *Haddock,* in *Thompson,* and in *Williams I.* Although it was found in all three cases not to be applicable to the unique interests and factors pertaining to the severance of the marriage status and the incidental determination denying alimony, it is now treated as a controlling precedent.

A normal action for divorce comprehends dissolution of the marital relation and, incident thereto, a property arrangement between the parties. I stand on the *Williams* decisions; and so I start from the proposition that full faith and credit must be given to an *ex parte* divorce granted by a State that is the domicile of one of the parties. The only legal question for our concern in this case is whether the other aspect of, and indeed an incident to, a proceeding for divorce, the property arrangement, is similar enough to the dissolution of the marital relation, with respect to both the interests of the parties and the nature of what is adjudicated, that constitutionally it may be treated alike.

*Haddock* v. *Haddock* and *Thompson* v. *Thompson* proceeded on the basis that they should be treated alike. The Court, however, solves all with the statement, "It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." This is an artful disguise for labeling the action with the question-begging phrase, "in personam." A dogmatic, unanalyzed disregard of the difficulties of a problem does not make the problem disappear. Strictly speaking, all rights eventually are "personal." For example, a successful suit in admiralty against a ship results of course not in loss to the ship but to its owner. The crucial question is: what is the fair way to proceed against these

424

interests? May a State deal with the dissolution of a marriage comprehensively, or must it chop up the normal incidents of the cause of action for divorce?

No explanation is vouchsafed why the dissolution of the marital relation is not so "personal" as to require personal jurisdiction over an absent spouse, while the denial of alimony incident thereto is. Calling alimony a "personal claim or obligation" solves nothing. I note this concern for "property rights," but I fail to see why the marital relation would not be worthy of equal protection, also as a "personal claim or obligation." It may not be translatable into dollars and cents, but that does not make it less valuable to the parties. It cannot be assumed, by judicial notice as it were, that absent spouses value their alimony rights more highly than their marital rights. Factually, therefore, both situations involve the adjudication of valuable rights of an absent spouse,[1] and I see no reason to split the cause of action and hold that a domiciliary State can *ex parte* terminate the marital relation, but cannot *ex parte* deny alimony. "Divisible divorce" is just name-calling.[2] I would therefore hold that

---

[1] Custody over children presents an entirely different problem. See *May* v. *Anderson*, 345 U. S. 528. The interests of independent human beings, the children, are involved. Also, insofar as the spouses' interests are concerned, the divorce may terminate their relations with each other as husband and wife, but it cannot terminate their relation to their children. They are still parents.

[2] "The deceptive appeal of the phrase 'divisible divorce' should not be permitted to obscure the basic concepts involved. A finding of divisibility may be appropriate where, as in *Estin*, the particular right at issue is a distinct property right, embodied in a previously granted judgment, which is no longer dependent, for its recognition or enforcement, upon the marital relationship, or where, as in *Armstrong*, the court rendering the divorce has itself severed the issue of support and left it subject to separate adjudication in the future. The situation is, however, decidedly different where, as in the case before us, the claim asserted depends for its very existence on the continuance of the marital status and that status and its incidents

Nevada had jurisdiction to make the determination it made with respect to alimony and that New York must give full faith and credit to the whole Nevada judgment, not just to part of it.

It should also be noted that the Court's decision, besides turning the constitutional law of marital relations topsy-turvy, has created numerous problems whose solution is far from obvious. The absent spouse need no longer appear in the divorcing State in order to be present when an adjudication is made. She (or he) may sue wherever she can serve the other spouse or attach his property. What will happen in States that grant alimony only as incident to a divorce? Most States do not have statutes like the New York statute involved in the present case. Would this Court require any State in which one spouse catches another to entertain a cause of action for alimony? This is a far cry from what was involved in *Hughes* v. *Fetter,* 341 U. S. 609. Also, it is not even settled what the relation of a State to an ex-wife and an ex-husband must be for the State, as a matter of due process, to be able to grant support on the basis that the parties were once man and wife.

Another view, agreeing that Nevada can adjudicate alimony *ex parte* incident to its granting a divorce *ex parte,* at least for purposes of its own law, would then hold that New York is not compelled to give full faith and credit to the valid Nevada judgment. "New York's law and policy is," so the argument runs, "that the right of a married woman domiciled in New York to support

have both been terminated by a jurisdictionally valid judgment of divorce." Judge Fuld, dissenting in this case in the New York Court of Appeals, 1 N. Y. 2d 342, 356–357, 135 N. E. 2d 553, 561. I would add that the concept of "divisible divorce" is a misnomer. The divorce is not divisible. It is the cause of action for terminating the marital relation and making a property arrangement that is divided.

426

survives an *ex parte* divorce, whether obtained in New York or elsewhere. . . . The interest of New York in her domiciliaries seems . . . to be of sufficient weight to justify allowing her to apply her own policy on the question of what effect *ex parte* divorces will be given as against the surviving support rights of her own domiciliaries."

To begin with, it cannot be pretended that New York is not discriminating against alimony adjudications in all out-of-state *ex parte* divorces, for a divorce granted to a husband in New York against a wife who is not served personally in New York is not *ex parte* if the wife is a New York domiciliary. Her domicile provides a basis of jurisdiction that would be sufficient in an ordinary nonmatrimonial action. See *Williams* v. *North Carolina, I,* 317 U. S. 287, 298–299; *Milliken* v. *Meyer,* 311 U. S. 457, 463.

To go to the heart of the matter, the Full Faith and Credit Clause is itself a constitutional adjustment of the conflicting interests of States, and we are not free, by weighing contending claims in particular cases, to make readjustments of the conflicting interests as if the Full Faith and Credit Clause did not exist. The clause requires that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State." See also 28 U. S. C. § 1738. It is true that the commands of the Full Faith and Credit Clause are not inexorable in the sense that exceptional circumstances may relieve a State from giving full faith and credit to the judgment of a sister State because "obnoxious" to an overriding policy of its own. But such instances "have been few and far between, apart from *Haddock* v. *Haddock*." See *Williams* v. *North Carolina, I,* 317 U. S. 287, 294–295.

Of course New York has substantial connection with a domiciliary who has been divorced *ex parte* in Nevada, but that provides no justification for allowing it to refuse

to give full faith and credit to that part of the Nevada judgment denying alimony. A State desiring to deny full faith and credit to the judgment of another State almost always has such a connection. Whatever the unusual circumstances that may justify making an exception to the requirements of the Full Faith and Credit Clause, this case does not present them because, for the reasons I have already stated, no stronger state policy can be urged in this case than was overridden in *Williams I*. Blanket discrimination against *ex parte* alimony decrees of sister States therefore subordinates the requirements of the Full Faith and Credit Clause to the policy of New York.

To justify the New York law as a "mere survival of a pre-existing right" is only another proof that "the word 'right' is one of the most deceptive of pitfalls; it is so easy to slip from a qualified meaning in the premise to an unqualified one in the conclusion." *American Bank & Trust Co.* v. *Federal Reserve Bank,* 256 U. S. 350, 358. There can be no "right" until the termination of the marriage, and the whole question in the case is which State shall be able to determine the incidents of the dissolution of the marriage status. Nor is analysis furthered by analogizing the "right" to alimony to the dower "right," thence sliding to the conclusion that since New York would not have to recognize a Nevada decree cutting off dower, it does not have to recognize the Nevada decree cutting off alimony. The differences between a "right" to alimony and a dower "right" are so decisive that I need not spell out why an assumed decision with respect to dower does not reach our problem.

We are also told that "the interest of the wife in not becoming single *and* penniless is greater than her interest in not becoming single." This is doubtless a correct statement of fact and might furnish a basis for legislation

of a kind not at issue in this case, since the New York law is based on its right to disregard all *ex parte* alimony decrees and not on an interest it may have in the indigent condition of former wives.[3]

For me, the rigorous commands of the Full Faith and Credit Clause are determinative. I cannot say that the Nevada judgment denying alimony is more "obnoxious" to New York policy (as expressed in § 1170–b of its Civil Practice Act) than its judgment of divorce. Since New York is required to give full faith and credit to the one, it is to the other.

MR. JUSTICE HARLAN, dissenting.

The Court holds today, as I understand its opinion, that Nevada, lacking personal jurisdiction over Mrs. Vanderbilt, had no power to adjudicate the question of support, and that any divorce decree purporting so to do is to that extent wholly void—presumably in Nevada as well as in New York—under the Due Process Clause of the Fourteenth Amendment, pursuant to the doctrine of *Pennoyer* v. *Neff,* 95 U. S. 714.

I cannot agree with such a holding. In the first place, as I see this case, there is no necessity to pass on this question at all. Our problem should be, initially at least, not whether this decree, insofar as it affects property, is "void" for lack of due process, but whether it binds New York

---

[3] We are not told what a third State is to do if suit is brought there. Does New York or Nevada law control? Since, under this view, the husband's *ex parte* judgment denying alimony to the wife is a valid one, at least in Nevada, I would suppose that the wife could get a support judgment *ex parte* in New York. Then, there would be not merely a problem of choice of law in the third State, which has no domiciliary connection with either party, but rather a question of which judgment is entitled to full faith and credit in the third State.

under the Full Faith and Credit Clause.   In other words, we need not, in the first instance, decide what the Due Process Clause forbids Nevada to do, but merely what the Full Faith and Credit Clause compels New York to do.   One of the wisest of our constitutional commentators has warned us to beware the "constricting necessitarianism" of deeming the two questions to be one and the same:

> "In a problem so fraught with infelicities whatever mediation is devised, there is wisdom in confining pronouncements closely to what is imperative in the particular case.   It is not logically necessary to deny Nevada's mastery within her own boundaries in order to deny her power of projection beyond them.   Freedom of home manufacture and consumption does not necessarily entail freedom of export.   Only if it is inexorable that what is meant by 'jurisdiction' must be either wholly absent or wholly unlimited need frailty in sister states be conditioned on total impotence at home."   T. R. Powell, And Repent at Leisure, 58 Harv. L. Rev. 930, 936.

Were we compelled to reach the question, I would by no means be ready to hold that Nevada, in connection with a valid divorce proceeding, had no *power* to adjudicate an incident so inextricably knit to the marriage status as is support.   I would agree with Judge Fuld, dissenting below, that the denial of power to Nevada rests on the "erroneous premise that a mere incident of the marital status, which 'in itself' furnishes no foundation for a cause of action' . . . is the equivalent of an independent right." [1]   Nor does it help to label Mrs. Vanderbilt's claim to support a "property" right and therefore an *in*

---

[1] 1 N. Y. 2d 342, 357, 135 N. E. 2d 553, 561.

*personam,* rather than an *in rem,* matter. If it is due process for Nevada to adjudicate the marriage status of a domiciliary without personal service over the absent spouse (as it clearly is, see *Williams* v. *North Carolina, I,* 317 U. S. 287), I see no reason why Nevada cannot, at least for the purposes of her own law, also adjudicate the incidents of that status.

I do not think, however, that this forecloses the issue before us. I revert, therefore, to what, for me, is the real question in this case: must New York respect Nevada's decree insofar as it purports to adjudicate the question of support? The answer to this question, I think, turns squarely on an issue of New York law, namely, whether Mrs. Vanderbilt was domiciled in New York at the time of the divorce.

If Mrs. Vanderbilt was a New York domiciliary at the time of the divorce, the situation would seem to me to be as follows: New York's law and policy is that the right of a married woman domiciled in New York to support survives an *ex parte* divorce, whether obtained in New York or elsewhere. The only question under the Full Faith and Credit Clause is whether New York is compelled to disregard her own law and policy in favor of the law of Nevada on the question of the survival of support rights subsequent to an *ex parte* divorce. My answer to this question is "no." The interest of New York in her domiciliaries seems to me to be of sufficient weight to justify allowing her to apply her own policy on the question of what effect *ex parte* divorces will be given as against the surviving support rights of her own domiciliaries. In my view it does not follow automatically that merely because New York must recognize the validity of Nevada's *ex parte* divorce, she must also recognize the effect Nevada would give to that divorce in connection with the wife's rights to support. The two questions are

governed by different considerations. I quote again from Professor Powell:

> "The 'irreconcilable conflict' between two states on the question of marital·status is not so insuperable in dealing with matters of money. It is less irksome to support two wives than to go to jail because of them. Though with respect to status one state or the other must yield, with respect to maintenance such yielding is not necessary.
>
> ". . . 'The problem under the full faith and credit clause is to accommodate as fully as possible the conflicting interests of the two States.' The solution is a matter of judgment in each case, judgment based not only on the particularities of the individual case or type of case but upon the desirability of as much generality and predictability as is consistent with a fair degree of control by a state over the conduct and the relationships of persons who in every substantial sense are its own home folks. . . .
>
> .      .      .      .      .
>
> "[It is argued] that the state where the stay-behind spouse has long been domiciled has an interest in making a quondam husband continue a prior obligation to support her, and that this interest is stronger and more meritorious than any possible opposing interest to prevent it that can be accredited to the state which gave him a divorce after being blindly satisfied that he intended an indefinite stay there. This seems so sensible that it should be obvious to any one who had never become confused by studying law." Powell, *supra,* at 952, 954–955.

In effect, the situation before us seems to me to be analogous to dower. If New York law should provide that the dower rights of her domiciliaries survive *ex parte*

divorces, I would suppose that New York could give effect to that policy in spite of an *ex parte* Nevada divorce which purported to cut off the right to dower. The problem in each case is to weigh the policy of giving an *ex parte* judgment uniform effect throughout the nation, against the interest of a particular State in a particular local policy. Where status is concerned, this Court held that the interest in certainty as to whether one is married or single outweighs the interest of home States in the marital status of their domiciliaries, so that North Carolina was forced to swallow Nevada's views as to what is sufficient cause for divorce even though the North Carolina wife had not appeared in the Nevada proceeding. *Williams, I, supra.* But I see no reason why we should extend that, for me, already somewhat unpalatable mediation to the limits of its logic in order to hold that Nevada's views as to support as well as divorce must be forced onto other States, and that Nevada can not only compel wives domiciled elsewhere to become single against their will, but to be pauperized against their will as well. Of course, the reason for the distinction is not that the wife's right to support is "worth" more than her interest in remaining a wife. But the interest of the wife in not becoming single *and* penniless is greater than her interest in not becoming single. In other words, merely because it is held that the wife must be deprived of one benefit *ex parte,* in the interest of national uniformity, does not *compel* us to hold that the other benefit must vanish with it, where the interest in national uniformity is not as compelling.[2]

---

[2] "It is easier to have a flat rule than to make distinctions based on judgment. Yet, from the standpoint of partitioning power among the several states, there may well be wisdom in having a gap between what due process will not forbid and what full faith and credit will not require. Certainly in suits over property and money there may be grounds that are thought good enough to justify a state in exert-

In deciding this case we must always remember that the *reason* why the Nevada *ex parte* divorce has the effect of a judgment in New York even on the question of status is because this Court found, in measuring the competing interests, that uniformity should prevail. It will not do, therefore, to say that once that is done the Court is foreclosed from weighing competing interests in determining the effect of the Nevada adjudication as to questions other than status. One cannot rest on the inexorability that the Nevada decree is a "judgment" and eliminate the fact that it was held to be a judgment outside Nevada as to status for reasons which do not necessarily apply to the question of support, any more than one can solve the problem by labeling support as a "property" right.[3]

Quite a different case is presented, it seems to me, where a wife becomes a domiciliary of New York after the *ex parte* divorce and is then granted support. In

---

ing its power so far as it relies wholly on its own strength and yet not so good that other states should be bound to lend a hand." Powell, *supra*, at 936; and see *id.*, n. 14.

[3] For the most compendious exposition of the many situations where this Court has held that the Full Faith and Credit Clause does not demand *automatic* respect in a sister State for a judgment valid in the State where rendered, see the dissent of Mr. Justice Stone and Mr. Justice Cardozo in *Yarborough* v. *Yarborough*, 290 U. S. 202, 213. There can hardly be dispute over the proposition that "in the assertion of rights, defined by a judgment of one state, within the territory of another, there is often an inescapable conflict of interest of the two states, and there comes a point beyond which the imposition of the will of one state beyond its own borders involves a forbidden infringement of some legitimate domestic interest of the other. That point may vary with the circumstances of the case; and in the absence of provisions more specific than the general terms of the congressional enactment this Court must determine for itself the extent to which one state may qualify or deny rights claimed under proceedings or records of other states." *Id.*, at 215 (footnotes omitted).

such a case New York could not pretend to be assuring the wife the mere survival of a pre-existing right, because the wife could have had no pre-divorce rights in New York at all. New York would merely be *granting* the wife a marital right in the teeth of a valid Nevada adjudication that there is no marriage. And, of course, at the time of the divorce New York would have had no interest in the situation of any kind. In such a case, therefore, it seems to me that the Full Faith and Credit Clause would require New York to respect the Nevada judgment as to support rights. Furthermore, even aside from the judgment, as a matter of choice of law I should think New York would be forced to look to the law of a State which had a substantial contact with these parties at the time of the divorce in determining the effect to be given to the divorce decree. It seems to me unfortunate that this Court should permit spouses divorced by valid decrees to comb the country, after the divorce, in search of any State where the divorcing spouse has property and which has favorable support laws, in order there to obtain alimony. I would therefore by no means hold the Nevada adjudication "void" and therefore of no effect in any State.[4]

Thus decision here, as I see it, turns on the domicile of Mrs. Vanderbilt at the time of the divorce. On this question I am left in some doubt. Section 1165–a of the New York Civil Practice Act makes one year's residence necessary to suits for support. This is amenable to the interpretation that New York would not recognize Mrs. Vanderbilt as domiciled in that State until the lapse of a year, that is, after the decree of divorce here involved. See *de Meli* v. *de Meli*, 120 N. Y. 485, 24 N. E. 996. On the other hand, the opinion below intimates that the one-

---

[4] See Morris, Divisible Divorce, 64 Harv. L. Rev. 1287.

year residency can be regarded as merely a procedural prerequisite to filing suit under § 1170–b, and does not affect Mrs. Vanderbilt's status as a domiciliary of New York *ab initio*.[5] In view of this uncertainty in the state law, I would remand to the state court for reconsideration in light of the above-stated principles.

---

[5] I draw that implication from the following passage in the opinion of the Court of Appeals: "But when the husband, abandoning his wife, left their California domicile to establish a Nevada domicile for his own purposes, the abandoned wife had a right to set up a New York domicile for herself and bring the matrimonial domicile to New York with her . . . . That right she exercised in this instance before the Nevada judgment was entered and she satisfied New York's residence requirements before suing for a separation . . . . We need not decide whether she would have the same right to come into New York, even after a foreign-State divorce, to take advantage of section 1170–b." 1 N. Y. 2d, at 351, 135 N. E. 2d, at 558.