Desmonto, J.
(dissenting). The question is whether, because plaintiff moved into this State after defendant divorced her in Nevada, the New York courts are without power under section 1170-b of the Civil Practice Act to direct defendant to make payments to her for her support.
Section 1170-b {supra) contains this: “In an action for divorce, separation or annulment * * * where the court refuses to grant such relief by reason of a finding by the court that a divorce * * * declaring the marriage a nullity had previously been granted to the husband in an action in which jurisdiction of the person was not obtained, the court may, nevertheless, render in the same action such judgment as justice may require for the maintenance of the wife.” As we shall show, justice surely requires that this defendant support this plaintiff. The question is whether there is authority in section 1170-b for the provision of such justice by the New York courts. The courts below have held that because of the earlier Nevada divorce the Full Faith and Credit Clause (art. IV, § 1) of the Federal Constitution forbids the application here of section 1170-b.
This chronology will furnish a factual background :
1942 — plaintiff, a resident, and defendant, a former resident of New York State, were married in Connecticut.
1944 — the parties took up marital residence in Vermont.
1948— a child was born to the parties.
1951 — defendant left the family home after announcing his intention to get a divorce and marry another woman and after an agreement between the parties that defendant would continue to pay plaintiff $700 a month for herself and the child and that she and the child would move to the vicinity of Oyster Bay, N. Y., to be near defendant’s mother.
1952 — defendant refused any longer to pay plaintiff for her own support (he has never since supported her) but continued to support the child. In June, 1952 he went to Nevada where he obtained a divorce in a proceeding in which plaintiff was not personally served and did not appear. The Nevada decree dissolved the marriage but made no provision whatever for 'support or custody. In November, 1952 plaintiff sued defendant in Vermont for support and custody and for a declaration of invalidity of the Nevada judgment.
*551 1953 — in August plaintiff moved to defendant’s mother’s home in New York State, remaining there until July, 1955 when she bought a residence in New York State in which she has since lived.
1954 — in March the Vermont County Court held the Nevada divorce legal and awarded to plaintiff custody of the child and support for her and the child. Later in 1954 plaintiff, obtaining jurisdiction by sequestering defendant’s property here, brought in a New York court the present action for a divorce or separation and for support and custody.
1955 — the Vermont Supreme Court affirmed the County Court as to the validity of the Nevada judgment and as to custody and support of the child but held that under Vermont law there was no power in the courts to grant support to a woman already validly divorced from her husband. In other words, the Vermont appellate court held itself powerless to pass on plaintiff’s prayer for alimony.
1957 — after a trial the New York Supreme Court and the Appellate Division dismissed plaintiff’s complaint in this suit.
I agree with so much of the decision below in this case as holds that the Nevada divorce is binding. I can see no reason, however, why defendant cannot under section 1170-b (supra) be compelled to give plaintiff the support to which she has a right and which he has refused her.
The history and purpose of section 1170-b (supra) have been thoroughly explored in the 1953 Law Revision Commission Report recommending its enactment and in Vanderbilt v. Vanderbilt (1 N Y 2d 342, affd. 354 U. S. 416). The Legislature granted to the New York courts a new power to award alimony, when and as justice so requires, to a wife against whom a divorce has been granted without jurisdiction of her person having been obtained. Our decision and that of the United States Supreme Court in the Vanderbilt case made it settled law that the statute is generally constitutional even when the wife has not gotten a judgment or agreement for her support before the dissolution of her marriage. Specifically, Vanderbilt held that the “ Full Faith and Credit ” due to the Nevada judgment as a dissolution of the marital status was no bar to later section 1170-b relief. In Vanderbilt we left open (because it was not presented by the facts) the question of whether section 1170-b was available to a *552 woman who came to live in New York State after a foreign divorce. And we do not now have to decide whether under any and every possible circumstance the remedy can be demanded by a divorced wife who for her own reasons selects New York as a forum. On the particular facts of this case we must answer these questions: first, is it unconstitutional to apply section 1170-b to one who like this plaintiff became domiciled in New York after divorce, and, second, if it be not unconstitutional so to do, is it contrary to our public policy and the meaning and purpose of section 1170-b?
Vanderbilt v. Vanderbilt (354 U. S. 416, 419, supra) held flatly that a Nevada decree just like the one here under consideration could not cut off the wife’s support right and that “ the Nevada decree, to the extent it purported to affect the wife’s right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition ’ ’. The right, therefore, remained. May New York enforce it under the circumstances of this case ?
The Supreme Court’s majority opinion in Vanderbilt v. Vanderbilt (supra) assumed without discussion that Mrs. Vanderbilt was sufficiently a domiciliary of New York State so that New York could constitutionally enforce her right to support. One of the dissenting Justices in the United States Supreme Court complained (354 U. S. 425) that the Vanderbilt decision would mean that a divorced wife ‘1 may sue wherever she can serve the other spouse or attach his property ”, but he conceded (p. 426) that “ New York has substantial connection with a domiciliary who has been divorced ex parte in Nevada ”. The other dissenting Supreme Court Justice in the Vanderbilt case thought (p. 435) that the Vanderbilt case should have been remanded to the New York courts for a determination (which our courts had in fact already made) as to whether Mrs. Vanderbilt was a New York domiciliary from the time she entered the State.
From all of the above it follows that the only real problem here is whether on the facts of the present case New York had sufficient “ contacts ” with this marriage so as to permit jurisdiction of this suit. That question is not to be answered “ no ” just because these two people never lived together in this State, since that was the fact as to the Vanderbilts, also. The only reason for a negative answer would be that this plaintiff
*553 moved to New York after her husband’s divorce. The sound and compelling reason for an affirmative answer is that she moved here by agreement with defendant and at his request. She did not shop around and pick the State most advantageous to her and most inconvenient and expensive for her former husband. Perhaps since her husband had abandoned her she could legally have done just that. But on the facts as they are, justice and public policy forbid defendant from now questioning the validity or effect of the change of domicile he himself urged on his wife.
Some point is made that because of the use in section 1170-b (supra) of the word “may” the granting or refusal of relief is discretionary. Possibly that is so, at least as to the amount of support money, but the Appellate Division apparently granted leave to appeal so that we might pass on a question of law and that law question must be as to whether there is in this case any legal bar to relief. I think there is none.
The judgment should be reversed, with costs, and the case remitted to the Appellate Division to pass on the question of discretion.
Judges Dye, Fui®, Van -Voorhis and, Burke concur with Judge Froessel ; Judge Desmond dissents in an opinion in which Chief Judge Conway concurs.
Judgment affirmed.