BETTY LOUISE HAMILTON TIEDEMAN, APPELLEE, V.
LYLE HERMAN TIEDEMAN, APPELLANT.
236 N. W. 2d 807

Filed December 18, 1975. No. 39972.

Pierson, Pierson & Fitchett, for appellant.

Con M. Keating of Marti, Dalton, Bruckner, O'Gara & Keating and Schuman, Milsten & Jackson, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and BRODKEY, JJ., and TESAR, District Judge.

TESAR, District Judge.

This is an action for registration of a foreign divorce decree, which contained certain money judgments. The District Court allowed said registration. We affirm.

The facts are that Betty Louise Hamilton Tiedeman and Lyle Herman Tiedeman were married in Laurel, Mississippi. Two children were born of that marriage. In December of 1968, the appellant moved from the State

of Mississippi to Oklahoma City, Oklahoma. He resided there until July of 1971. Appellant then moved to South West City, Missouri, which is approximately 1 mile from the Oklahoma border. The appellee and her children moved from Laurel, Mississippi, to Tulsa, Oklahoma, in December of 1971. The evidence showed that appellant registered and licensed his car in the State of Oklahoma in 1971 and 1972. Appellant and appellee filed joint federal and state tax returns, for the years 1971 and 1972, listing their residence as Tulsa, Oklahoma. The appellant was notified of the proceedings against him in the District Court for Tulsa County, Oklahoma, by certified mail. His signed return receipt was introduced into evidence without objection. The subject of this appeal is the registration of the judgments of the District Court for Tulsa County, Oklahoma, which required appellant to pay temporary and permanent child support and fees.

The validity of the divorce is not in question. Nebraska has long recognized the divisibility of foreign divorce proceedings. Mandelberg v. Mandelberg, 187 Neb. 844, 195 N. W. 2d 148. The "divisibility doctrine" holds that while a state court may have jurisdiction over the marriage to cause its termination, that same court may lack personal jurisdiction to adjudicate "personal matters" such as support or alimony. Estin v. Estin, 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561; Vanderbilt v. Vanderbilt, 354 U. S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456. Thus, the termination of the marital status may be entitled to full faith and credit, and yet, this recognition may be withheld from an accompanying money judgment.

As we said in Repp v. Repp, 156 Neb. 45, 54 N. W. 2d 238: "* * * when a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is open to inquiry. The party attacking the validity of the judgment has the burden of establishing its invalidity. * * * If such judg-

ment on its face appears to be one entered by a court of general jurisdiction, such jurisdiction over the subject matter and the parties will be presumed, unless disproved by extrinsic evidence or by the record itself." Appellant asserts that the presumption should not attach here. Appellant cites 50 C. J. S., Judgments, § 893, p. 500, for the proposition: "Where the duly authenticated record of the judgment of a court of general jurisdiction in another state is produced, it will be presumed that the court had jurisdiction, except where the defendant was not in the state when the judgment was rendered, or where jurisdiction wholly depended on statute. The burden of proof with respect to the jurisdiction of such court is generally on the party claiming a want of jurisdiction." The above exceptions to the presumption of validity normally accorded foreign judgments were carved out by a very restrictive theory of jurisdiction. This theory could be summed up in the following: "The tribunals of one State have no jurisdiction over the persons of other States unless found within their territorial limits; they cannot extend their process into other States, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy." Galpin v. Page, 85 U. S. 350, 367, 21 L. Ed. 959. See, also, Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. However, the concepts of jurisdiction and what things are permitted by the due process clause have changed significantly. A landmark case in the area, International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, asserted: "* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Appellant acknowledges in his brief: "* * * the theory of minimum contacts can be used to acquire in personam

jurisdiction over a non-resident defendant in a divorce action." Acceptance of the minimum contact theory to obtain personal jurisdiction over a nonresident would seem to preclude the territorial exception to the presumption of validity of a foreign judgment.

The trial court found that the presumption of validity was not rebutted. Even if the trial court had not found the presumption in effect, it cannot be said that there was a total lack of probative evidence to support that finding, nor that that finding was wrong as a matter of law.

Previously, it was mentioned that due process standards have changed considerably. Any determination here of what standards are necessary for personal jurisdiction must be seen as an attempt to delineate the parameters of Oklahoma law, in other words, whether the Oklahoma court had personal jurisdiction over the appellant. This question turns on the scope of Title 12 Oklahoma Statutes Annotated, section 1701.01 et seq. More specifically, it centers on the seventh base in section 1701.03(a): "(7) maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States." In interpreting the above section, the Oklahoma Supreme Court asserted: "* * * it is clear from the concluding portion that it was the intention of our legislature to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the United States Constitution." Hines v. Clendenning (Okla., 1970), 465 P. 2d 460. Toward defining these outer limits, the Oklahoma court also cites with approval, Travelers Health Assn. v. Virginia ex rel. State Corporation Commission, 339 U. S. 643, 70 S. Ct. 927, 94 L. Ed. 1154, and McGee v. International Life Ins. Co., 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223. Both cases concerned the sale of

insurance policies. In McGee, personal jurisdiction was found on the basis of the sale of one insurance policy in California. The United States Supreme Court emphasized the "estimate of the inconveniences" and found those to weigh heavily with the plaintiff, McGee. The court asserted that to hold otherwise would be to preclude persons with moderate claims from any convenient, affordable means of redress. California was said to have a "manifest interest" in providing an effective means of redress for the claims of its residents. In this vein, the Oklahoma court asserted: "The 'manifest interest' of the State of Oklahoma in the marital status, and financial relief incident thereto, of its residents, is surely as great as the interest of California in providing effective redress for insurance policy beneficiaries residing within its borders." Hines v. Clendenning, *supra*. The Oklahoma court found that sufficient minimum contacts existed for the exercise of personal jurisdiction.

Here, it cannot be said that there is a total lack of probative evidence to support a court's finding that either appellant was an Oklahoma resident or that sufficient minimum contacts were present to support personal jurisdiction over the appellant. Appellant admittedly resided in Oklahoma for approximately 3 years, and he planned from the outset to stay in Oklahoma if successful. It is reasonable to assume that appellant would not have come to Oklahoma if he had not intended to be successfully employed. Thus, appellant could be said to have intended to make Oklahoma his domicile. As intent is a mental process, relevant facts and circumstances must be scrutinized. Appellant registered his car in Oklahoma in 1971 and 1972. Appellant also filed joint state and federal income tax returns with appellee in 1971 and 1972. These returns listed Tulsa, Oklahoma, as his residence. The uncertain nature of appellant's activities in Missouri do not require a finding that he was a resident of that state. The above facts, plus visits of appellant to his family in

Tulsa provide ample probative evidence whereby a trial court could find the appellant a resident of Oklahoma.

In some ways, the present case may be seen as the opposite of Hines v. Clendenning, *supra*. In Hines, the wife was abandoned in Oklahoma. Here, the wife sought to join her husband in Oklahoma, the appellant husband did not want his family to join him. Appellee followed the trail her husband had laid to Oklahoma to seek employment for herself. As appellee still resides in Oklahoma, she cannot be said to be forum shopping. Thus, this is not a species of "migratory" divorce.

Appellee is a resident of Oklahoma and appellant had a sufficient quantum of contacts and personal jurisdiction may attach on that basis. There is no argument by appellant that the Oklahoma statutory procedures relative to service were not met. Appellant admits that he had notice of the proceedings in the District Court for Tulsa County, Oklahoma. Thus, an alternative basis for the trial court's finding of personal jurisdiction over the appellant could be based on sufficient minimum contacts by the appellant. In an extremely mobile age, this expansive authority to assume in personam jurisdiction clearly is appropriate.

It cannot be said that there was a total lack of probative evidence of appellant's actions linking him to Oklahoma, or to support a finding that he was an Oklahoma resident, nor can it be said that either of the above conclusions would be wrong as a matter of law. The holding of the District Court for Lancaster County is, therefore, affirmed.

AFFIRMED.