COVINGTON, Judge.
This case involves the applicability of a rule of law referred to as the “divisible divorce” doctrine. The facts giving rise to its consideration are not in dispute.
James E. Golson (appellant) obtained a judgment of separation on his reconventional demand from Nell Holden Golson on the grounds of cruel treatment. In the judgment he was condemned to pay to his wife the monthly sum of $229.12 in cash and the monthly mortgage payment on the former matrimonial domicile of $70.88. Appellee was given the use of the home. This judgment was signed on April 15, 1975. On October 14, 1975, appellee caused a rule to issue for the purpose of obtaining an execu-tory judgment in the amount of the accumulated arrearage. Appellant, in response to the rule, filed an exception of no cause of action based on the fact that he had obtained a divorce judgment from appellee in Tennessee on August 5, 1975. The trial judge overruled the exception, fixed the arrearage in the amount of $916.48 and granted judgment in this amount in favor of appellee. It is from this judgment that appellant appeals. We reverse in part, amend and, as amended, affirm.
At the hearing on the rule all pertinent facts were stipulated: the judgment of separation, above; appellant’s payments thereunder through July, 1975; the Tennessee judgment, above; constructive service in Tennessee in accordance with Tennessee law by publishing notice of the proceedings in the local newspaper for a period of four weeks but without direct notice to or any knowledge thereof by appellee; judgment in Tennessee obtained by default; the decree being silent as to alimony pendente lite or any other type of maintenance and support obligation on the part of appellant.
Based on these facts, the trial judge in his written reasons for judgment stated:
“As argued by counsel for Mrs. Golson, there is and must be a divisible divorce doctrine. See the U.S. Supreme Court case of Estin v. Estin, 334 U.S. 541 [68 S.Ct. 1213], 92 L.Ed. 1561 and a companion case, Kreiger v. Kreiger, 334 U.S. 555 [68 S.Ct. 1221], 92 L.Ed. 1572 and the later case of Vanderbilt v. Vanderbilt, 354 U.S. 416, 1 L.Ed.2d 1456, 77 S.Ct. 1360, as cited. Otherwise, this husband would be permitted to terminate in an *1231 out-of-state court a vested right granted Mrs. Golson by valid judgment of a Louisiana court. Her right thus vested in Louisiana law could not have been terminated by a Louisiana court unless Mrs. Golson, herself, committed certain acts that would have rendered her further at fault in the premises. If Mrs. Golson had continued to live in Louisiana and committed no improper act, no Louisiana court could have divested her of the right once acquired in the judgment of separation. It follows as night the day that no court of a sister state should be able to do to a Louisiana citizen that which the court of her own domicile could not do. Therefore, Mrs. Golson’s right to alimony continues at least until such time as a valid Louisiana divorce decree could have been attained.
“This court recognizes the validity of the Tennessee divorce but denies any effects flowing from that judgment which would deprive the Louisiana wife of her vested right under the laws of this state.
Appellant argues that a prior judgment of separation and all incidents thereto, including alimony pendente lite and child support, are abated by a subsequent valid divorce. Thornton v. Floyd, 229 La. 237, 85 So.2d 499 (1956); White v. Morris, 236 La. 767, 109 So.2d 87 (1959); Kennedy v. Kennedy, 261 So.2d 657 (La.App. 4th Cir., 1972); Starkey v. Starkey, 209 So.2d 593 (La.App. 1st Cir., 1967); Hampson v. Hampson, 271 So.2d 898 (La.App. 2d Cir., 1972); Hill v. Hill, 304 So.2d 922 (La.App. 1st Cir., 1974); Webster v. Webster, 308 So.2d 302 (La.App. 1st Cir., 1975); Vetter v. Vetter, 299 So.2d 899 (La.App. 2d Cir., 1974); Broussard v. Menard, 316 So.2d 485 (La.App. 3rd Cir., 1975). Appellant particularly notes that the Starkey, Hampson, Hill and Webster cases, above, involved valid foreign ex parte divorce judgments. Accordingly, appellant submits that Louisiana has in the past and should in the instant matter give full faith and credit to the Tennessee judgment.
Appellee on the other hand contends that the rule set forth in Estin, Keiger and Vanderbilt, above, is applicable here. Further, that the effects of abatement pronounced in Thornton v. Floyd, above, were improperly applied in the Starkey, Hampson and Hill cases, above. In Thornton, the court stated: (85 So.2d 499, 501):
“It necessarily follows that a judgment decreeing a divorce between the spouses, with its attending finality and conclusiveness, generally abates all judgments of separation from bed and board, including all incidents flowing therefrom. A judgment of divorce becomes determinative of the rights of all parties. When such a decree incorporates matters dealing with the custody of children and rights to alimony for maintenance and support, those provisions are deemed not permanent but matters subject to judicial change or modification. However, when a definitive decree of divorce is silent as to the custody of children and of an award of alimony necessary for their maintenance and support, we are convinced that such a judgment, being final and conclusive, abates and renders ineffective a judgment of separation with all of its incidents and cannot be altered or modified by a summary proceeding seeking thereby to revive the incidents of the separation suit which have not been presented for adjudication in the divorce suit.”
However, appellant points out that in Thornton a foreign ex parte judgment was not involved. The husband, wife and children were all domiciled in Louisiana. The separation and divorce decrees were rendered by a Louisiana court which had jurisdiction over all of the parties. He submits that it was error for Starkey to say that it was controlled by Thornton when Mrs. Starkey had made no appearance in the Texas court which granted her husband his divorce and particularly when the court in Starkey said that Mrs. Starkey committed procedural error in attempting to modify the separation judgment following a judgment of divorce, and that her remedy was by a “direct and separate action.” In Starkey, this court sustained an exception filed by the husband and pretermitted any “consideration of the issues sought to be raised” *1232 by the “principles enunciated in the Vanderbilt and Estin cases, supra.” Therefore, appellee claims that the court in Hampson was in error when it stated that the principles set forth in Vanderbilt and Estin were rejected in Starkey. Appellee concludes by urging that neither Hampson nor Starkey should stand for the proposition that an ex parte foreign divorce decree, under any and all circumstances, abates alimony provisions contained in a Louisiana judgment of separation.
In Estin, the parties, while domiciled in New York, separated in 1942. In 1943, the wife sought and obtained a judgment of separate maintenance wherein the husband was ordered to pay her $180.00 per month as “permanent alimony.” In January of 1944 the husband moved to Nevada where he obtained a divorce in 1945 on the grounds of three years continual separation without cohabitation. The decree contained no provision for alimony and the husband discontinued his payments under the New York judgment. Thereupon, the wife sued in New York for a supplemental judgment for the amount of the arrearage. This latter controversy found its way to the U.S. Supreme Court. There the court noted that the courts of New York had found that its support judgment “survived” the Nevada decree and was therefore binding on the federal tribunal unless it was violative of the Full Faith and Credit Clause of the Federal Constitution.
The court reasoned that whereas each state must recognize and give full faith and credit to a judgment of a sister state, the requirement to do so is not without some limitation. It recognized that both Nevada and New York had legitimate interests in the premises. Nevada’s interest was in the determination of the marital status of its citizen. New York’s interest rested on the state’s natural concern lest one of its citizens become dependent upon it for maintenance and support. The New York judgment was declared to be a property interest of the wife. It was created by New York in a proceeding in which both parties were present and imposed obligations on the husband and vested certain rights in the wife. Any effort to adjudicate her rights in Nevada was declared to be an “attempt to exercise an in personam jurisdiction over a person not before the court.” Thus, the court stated, 334 U.S. 541, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561:
“The result in this situation is to make the divorce divisible — to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.” (Emphasis ours)
The dissents were bottomed on the premise that alimony in New York is an obligation incidental to and growing out of the marriage and if New York is required to recognize the divorce which dissolves the marriage the consequence should be the termination of the obligation.
Vanderbilt went a step further. The husband and wife separated while living in California. In February of the next year the wife moved to New York where she resided thereafter. In March of that year the husband filed suit for divorce in Nevada where he was domiciled. The wife was not served with process in Nevada and did not appear before the divorce court. In June the Nevada court rendered a divorce judgment. In April of the next year the wife instituted an action in New York praying for separation and for alimony. Again, the New York court held that it was for that state to determine the alimony rights of the wife.
The United States Supreme Court said (at 354 U.S. 418, at 77 S.Ct. 1362, 1 L.Ed.2d 1459):
“Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband.”
Thus, the constitutional rule is that a court can not adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. Vanderbilt v. Vanderbilt, above.
*1233 It will make for clarity to give a brief statement of the law concerning foreign divorces at this point. A valid foreign judgment of divorce is entitled to full faith and credit pursuant to the United States Constitution, Article IV, Section 1. Williams v. North Carolina (Williams II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).
A foreign divorce judgment is valid and entitled to recognition where the court rendering the judgment had jurisdiction to grant the divorce by virtue of its having jurisdiction over the domicile of the party in whose favor the divorce was granted. Williams II, supra; and Williams v. North Carolina (Williams I), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942).
The instant record reflects that the husband had established a good faith domicile in Tennessee, the state of rendition of the judgment of divorce, and the validity of the divorce judgment is not seriously questioned. Hence, the Tennessee divorce must be recognized in Louisiana. See Hill v. Hill, above.
The effect to be given a foreign divorce depends on whether the divorce was a contradictory proceeding or an ex parte proceeding. In general, a contradictory proceeding, where the divorce court had in personam jurisdiction, adjudicates all rights of the parties incidental to the divorce, while an ex parte divorce does not.
This effect of divorce judgments is illustrated by 24 Am.Jur.2d “Divorce and Separation,” sec. 992, p. 1128-1129, as follows:
“The divorce court must have jurisdiction of the wife in personam in order to adjudicate or cut off her right to alimony. While a court may gain jurisdiction to grant a divorce by constructive service upon a nonresident wife, such a service does not give it jurisdiction to adjudicate alimony rights, and so it is held that an ex parte divorce obtained by the husband cannot affect the right which the wife may have to alimony under the laws of another state, and any express or implied adjudication against her claim is void and will not be given effect by comity or under the full faith and credit clause.”
As an example of the effect to be given the ex parte divorce judgment, the United States Supreme Court in Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), decided that a Nevada divorce court, which had no personal jurisdiction over the wife, had no power to terminate a husband’s obligation to pay alimony as required by a pre-existing New York separation judgment.
This effect is emphasized by the language of the United States Supreme Court in Vanderbilt v. Vanderbilt, above, as follows (354 U.S. at 418, 77 S.Ct. at 1362, 1 L.Ed.2d at 1459):
“It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. Here, the Nevada divorce court was as powerless to cut off the wife’s support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court’s jurisdiction.”
This is where the doctrine of “divisible divorce” comes in. This doctrine is rooted in a conception of marriage as a “bundle of incidents,” some of which survive an ex parte divorce.
A reasonable basis for recognizing the doctrine of “divisible divorce” has been stated:
“And although the ex parte divorce must be given sufficient recognition to permit remarriage and the raising of a family, there is no compelling reason why it should also terminate the wife’s support rights. Furthermore, the state in which the wife lives and in which family property may be located does have an interest in preserving such incidents of marriage as the support obligation.” Comment, Divisible Divorce, 76 Harv.L.Rev. 1239 (1963).
We now turn to our own law relative to the rights and responsibilities of wives and husbands in Louisiana. The ba *1234 sics are: Each owes to the other the mutual obligation of support and assistance. C.C. Art. 119. If the wife does not have sufficient income for her maintenance, the husband is obliged to support her in proportion to her needs and his means. C.C. Art. 148. This obligation continues throughout the existence of the marriage, even though the wife has been deemed guilty of fault. Hillard v. Hillard, 225 La. 507, 73 So.2d 442; and Boucvalt v. Boucvalt, 235 La. 421, 104 So.2d 157. Following the judgment of divorce a wife who is without fault is entitled to alimony. C.C. Art. 160.
Now, with respect to domiciliaries, that is, where both husband and wife are residents of Louisiana at the time of the judgment of separation and of the divorce, it would appear that a policy of strict abatement should follow and the latter judgment should terminate all incidental payments, alimony pendente lite, custody and child support contained in the former judgment. Thornton v. Floyd, above. Both parties are personally subject to the jurisdiction of the court. Each has the opportunity to see that his (her) rights are fully protected. The legitimate interests of the state sought to be protected by the “divisible divorce” doctrine, which limits the impact of the Full Faith and Credit Clause, are secure until in personam jurisdiction is had on all parties.
We note that our Supreme Court has not expressed itself as to what effect it would give to a foreign ex parte divorce decree vis a vis the incidental aspects of a judgment of separation of one of our own courts. The issue was not presented in Thornton and White, above. Although it can be reasonably argued that the result reached in Starkey was tantamount to a rejection of the principles announced in Estin and Vanderbilt, above, the decision in Starkey was limited to the situation that where a wife seeks alimony and/or support award after divorce, she must do so by an independent proceeding and not in the prior separation proceeding.
We understand and interpret Estin, Kreiger and Vanderbilt to mean that a court of the state of domicile of the wife can refuse to recognize or give full faith and credit to a foreign divorce judgment as it affects alimony being received by the wife, where there was no in personam jurisdiction over the wife, and which judgment would in all actuality terminate the alimony the wife was receiving under a separation judgment rendered by the domicile state having in personam jurisdiction over both parties. Stated another way, this court can refuse to give recognition and full faith and credit to a foreign divorce judgment, as it affects alimony, which would terminate the alimony the wife was receiving from a separation decree if the foreign court had no personal jurisdiction over the wife.
While some may want to draw a distinction between a wife at fault in a separation proceeding and one not at fault, we can see no distinction for the purpose of recognizing or giving full faith and credit to a foreign divorce judgment as it affects alimony being received by the wife. We are convinced that for a divorce judgment to be effective in terminating the alimony the wife is receiving from the separation judgment, there must be personal jurisdiction over the wife. Starkey, by this court, presents no problem, for it dealt with the manner in which one should proceed in Louisiana to receive alimony and support after a divorce. This did nothing more than follow Thornton and make a procedural rule consistent regardless of which court rendered the divorce judgment. However, once a wife is receiving alimony, the rules to be applied in terminating that alimony should have as their basis personal jurisdiction.
Although the Supreme Court has not been confronted with the proposition before us, we deem that the proper position for the courts of this state to take is that until a divorce is rendered by a court with in personam jurisdiction over the wife, or the foreign divorce judgment is recognized and given full faith and credit by a court of competent jurisdiction in this state, which would have personal jurisdiction over the *1235 wife, the right to alimony pendente lite granted the wife by C.C. Art. 148 cannot be terminated. We further believe, however, that in the interest of all parties, the effective date of the recognition of the foreign divorce judgment should be that date it is presented to a Louisiana court for recognition, either in a proceeding to do so or in any other proceeding.
The trial judge recognized and gave full fáith and credit to the foreign divorce judgment, but ruled that it did not terminate the alimony award, and thus awarded ap-pellee judgment for alimony pendente lite for the months of August, September, October and November, 1975, computed at the rate of $229.12 per month. The appellant having presented his foreign divorce judgment for recognition to the trial court on October 21, 1975, he owes alimony only for the months of August, September and the first 21 days of October, 1975, or a total of $613.45.
Therefore, for the above and foregoing reasons the judgment of the trial court is reversed insofar as the same failed to recognize that appellant’s divorce decree terminated appellee’s right to alimony effective October 21, 1975; it is amended by reducing the judgment therein granted from $916.48 to the sum of $613.45; and, as amended, it is affirmed. All costs of these proceedings are assessed equally between the parties.
REVERSED IN PART, AMENDED AND AS AMENDED AFFIRMED.